## BROCK v. STATE.

### Opinion delivered November 27, 1911.

1. CONSPIRACY—NECESSITY OF ALLEGATION.—It is not competent for the State in a criminal case to prove a conspiracy where none was alleged. (Page 153.)

2. WITNESSES—IMPEACHMENT.—When a witness is cross examined as to a matter collateral to the issue, he can not, as to his answer, be subsequently contradicted by the party putting the question. (Page 153.)

3. TRIAL—IMPROPER ARGUMENT.—In a prosecution for murder it was error to permit an attorney for the State to argue that, the killing being proved, the burden of proving that he was justified is on the defendant, "and if he does not prove that he is not guilty you must convict him of murder," although the court correctly told the jury that

the "burden rests upon the State throughout the case, whatever else may arise." (Page 153.)

4. APPEAL AND ERROR—HARMLESS ERROR.—It was not prejudicial error in a murder case to refuse to allow the officer to whom the accused surrendered to testify as to what the accused said to him when he surrendered and confessed to the killing if the accused was permitted to testify thereto. (Page 154.)

Appeal from Jackson Circuit Court; *R. E. Jeffery*, Judge; reversed.

### STATEMENT BY THE COURT.

On the night of November 19, 1910, between 9 and 10 o'clock, Dave Brock killed James Parsons in Jackson County, Arkansas, by shooting him with a pistol, and Brock was convicted on sufficient indictment of the crime of murder in the first degree, and appeals to this court. Brock was indebted to Parsons in the sum of six dollars, and went to Parsons's home, and called him out of bed. Parsons went out in the yard to where Brock was. They were stooping down counting the money when Parsons said to Brock: "That's right, Dave; that's six dollars," and the moment he said that Brock raised to his feet, and Parsons said: "Don't do that, Dave," and just then Brock shot him. Parsons did not rise up from where he was stooping down, but Brock did rise up and shoot him, and then ran away from the house. This, briefly stated, is the testimony, on the part of the State, of the one eye witness, Mrs. Parsons, to the killing. The testimony on behalf of the defendant tended to show that Brock owed Parsons six dollars, and had offered to pay him, on one occasion in hogs at a certain price; that the price of the hogs was more than the debt due Parsons, and Parsons at the time did not have the money to pay Brock the difference. Then Brock offered to let Parsons take the hogs and pay later. This Parsons declined, and promised to call and get the hogs as soon as he could get the money to pay for them.

Brock sold the hogs before Parsons called for them. When Parsons found that the hogs had been sold, he made threats to various parties to the effect that if Brock did not let him have the hogs, instead of paying him the money, he intended to kill him. One witness said that Parsons, speaking of Brock, used this language: "G—d— him, I will kill him!" John

Allgood, the father-in-law of Brock, testified that Parsons told him to "tell Brock that if he paid him the money, instead of letting him have the hogs, according to their agreement, that they would mix up," and Parsons further said, speaking of Brock: "Why, I would kill the d— s— of a b— before I would let him do me that way!" This last threat was communicated by Allgood to Brock a short time before Brock went to Parsons's house. Parsons had been demanding the money that was due him, and Brock had received notice that Parsons wanted his money. Brock went to Parsons's house, as his testimony tends to show, for the purpose of paying him the money. He says that when he got to his own home that evening, he found his mules and stock out and his gates open and his crib of corn open, and that he took a pistol, thinking that some persons might be about there stealing corn, stock and harness, same as had happened to him a few days before, that he hunted for the parties considerable time, and could not find them. He had promised to pay the debt that week, and it was Saturday night, so he went over to Parsons for the purpose of paying him. He asked some of the boys to go with him, but they all refused, and he went alone.

At the time he started over to Parsons's, his father-in-law and others of his household cautioned him about the danger, but he had no ill-will against Parsons, and anticipated no trouble with him, so he went over to Parsons's house and called him out for the purpose of paying him. "The money he had was mostly small change." He counted out the money on a block or slab. Parsons gave him a receipt. Brock then described what took place after this as follows:

"I asked him, Parsons, to read it, if he would mind reading it; he says 'Read it yourself,' quick and short. I knew then, for the first time, that he was out of the way. He gave me a receipt, and I thought I would walk away from him. I made about three steps toward home. He caught hold of my shoulder. He kind of turned me around, and I jerked loose from him, and he backed up in front of me, like, and says: 'Dave, after this, when you make a trade, G—d— you, stick to it, or, G—d— you, I will kill you,' and he runs his hand in his pocket (indicating), and I jerked out this gun and fired, and jumped as far as I could to get out of his way."

In brief, the above are substantially the facts as related by the only two eye-witnesses.

John Allgood testified on behalf of the appellant as to the threats that had been made by Parsons concerning appellant and that he had communicated these threats to appellant. On cross examination he was asked the following question: "I will ask you if you had a conversation with that man Frank Humphreys that you have just been shown here on the south-bound passenger train, that is No. 23, of the St. Louis, Iron Mountain & Southern Ry. Co., the week after this killing, during the week coming from Newport or going from Newport to Bradford, and in which you stated to Frank Humphreys, you and he being present, if you did not say in your conversation that you were with Brock that night?" The appellant objected to the question, and his objection was overruled. Witness answered as follows: "I think probably I had a conversation with the man, but, as to saying that I was with him (Brock) at Jim Parsons's, I deny it." He was further asked: "Q. You did not do that in the conversation I have just called your attention to; you did not say that you were with Brock at Jim Parsons's when he killed him?" "A. I did not."

Frank Humphreys was called in rebuttal, and permitted to testify over the objection of appellant that he had the conversation as indicated in the above question with witness Allgood, and that Allgood told him that he was with Dave Brock when Dave Brock killed Parsons, and went with Dave Brock to the officer to give himself up.

Among other instructions, the court gave the following: "The jury are instructed that if the evidence shows, beyond a reasonable doubt, that the defendant killed James Parsons, the person named in the indictment, in manner and form as charged therein, the burden of proving facts and circumstances which mitigate, justify or excuse the homicide devolves upon the defendant, unless such facts or circumstances sufficiently appear from the evidence offered by the State. If the defendant has failed to prove such circumstances or facts, and they do not otherwise appear, you can not consider them as matters proved in the case. But if, upon the whole case, you have a reasonable doubt that the killing amounted to murder, you

can not find the defendant guilty of that crime.   However, the burden of proving those circumstances which make a murder murder in the first degree can never devolve upon the accused. That burden rests upon the State throughout the case, whatever else may arise."

In the course of his argument, Gustave Jones, one of the attorneys for the State, made use of the following remarks: "John Allgood went to bed, and went to sleep, and sent Brock on the mission of murder, and Brock waited until Parsons was looking down and counting the money.   He waylaid him and killed him."   And again:   "The defendant, Brock, and John Allgood were just carrying out the plan they had agreed upon to kill Parsons, and Brock killed him in pursuance of their plan agreed upon."   And again:   "The instruction means that, the killing being proved, the burden of proving that he was justified in doing it is on the defendant; and if the defendant does not prove to your satisfaction that he is not guilty, you must convict him of murder."   And again:   "The defendant's shrewd advisers, Judge Stuckey and Mr. Grant, when they were advising him what to say, did not know what Brock had told Frank Humphreys, as was testified to before you in this case by Frank Humphreys."   And the prosecuting attorney, in his argument, said to the jury:   "It is my opinion that John Allgood was there when Dave Brock shot James Parsons." The above remarks of counsel were objected to at the time, and the objection was overruled, and exceptions were duly saved to the ruling of the court.

The State proved by witness Oliver Smith, who was a constable, that immediately after the killing, Brock went to him and surrendered, telling him that he had killed Parsons. The appellant on cross examination, sought to show by the witness that, at the time the appellant surrendered and made the confession to him, he related other facts and circumstances in connection therewith as a part of the same conversation, but the court refused to allow this testimony to go to the jury, only permitting the witness to testify to the fact of the surrender and that appellant had confessed to the killing.   The appellant objected, and duly excepted to the ruling of the court.

*Stuckey & Stuckey* and *Ira J. Mack,* for appellant.

1.   Counsel review and discuss the testimony of the

witnesses, and contend that the evidence does not support the verdict, citing, in support of the proposition that the court will reverse where the evidence does not sustain the verdict, 93 Ark. 195; 63 Ark. 65; 70 Ark. 385; 88 Ark. 579; 79 Ark. 608; 84 Ark. 555.

2. The argument of the attorneys for the State to the jury, objected to by appellant at the time, and here urged as reversible error, was, as to the facts in the case, not supported by the testimony rendered, and, as to the instruction being commented on, an erroneous declaration of law. This argument and this erroneous declaration of law went to the jury, upon appellant's objections thereto being overruled, with the indorsement of the court, and was necessarily prejudicial to the appellant. As to the instruction, it was tantamount to a further charge by the court to the jury that *unless the defendant proved to their satisfaction that he was not guilty they should convict him of murder.* 19 Ark. 330; 72 Ark. 461; 65 Ark. 389; 76 Ark. 430; 82 Ark. 432; 95 Ark. 362; 60 Ark. 76; 139 S. W. 287; 51 Ark. 147, 43 Ark. 73; 89 Ark. 394; 58 Ark. 367; 69 Ark. 648; 65 Ark. 475; 61 S. W. 756; 25 N. W. 302; 92 N. W. 321; 47 Atl. 748; 35 S. E. 123; 26 N. E. 377; 70 Am. St. Rep. 495.

3. The court erred in admitting only such statements made by the appellant to the witness Oliver at the time he surrendered to Oliver as admitted he had killed Parsons, and excluding the other declarations made by appellant at the same time showing the circumstances of the killing. Where a confession is offered in evidence, the defendant is entitled to have the confession in its entirety go to the jury, or at least all of it that is relevant. 69 Ark. 602; 1 Greenleaf on Ev. (15 ed.) § 218; 42 Ark. 70; 14 Ark. 444.

*Hal. L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1. There is ample testimony in the record to support the verdict, and it needs no citation of authorities on the proposition that this court will not reverse where there is any testimony to sustain the verdict.

2. The argument complained of was not prejudicial. There was unquestionably testimony upon which counsel could base the inference that there was an understanding

between Allgood and Brock, and it was not improper for the State's attorney to say that in his opinion the murder was the result of such conspiracy.  As to the comments on the instruction, the effect of the attorney's statement was only to say that the burden of proving justification was on the defendant, the killing first having been proved, and that if he did not prove justification  they should convict him of murder.  The jury were fully instructed that the burden was on the State to prove the defendant guilty of murder in the first degree, and that the evidence must satisfy their minds of his guilt beyond a reasonable doubt.  The remarks of counsel could not have been prejudicial.  95 Ark. 321;  73 Ark. 453; 94 Ark. 548;  95 Ark. 233;  76 Ark. 39;  88 Ark. 62;  94 Ark. 514;  66 Ark. 16;  71 Ark. 62;  74 Ark. 256;.

3.  There was no prejudice to appellant in excluding that part of his conversation with Smith of which complaint is now made, even if it be treated as a confession.  Appellant himself testified, and got the full benefit of the statements by detailing them to the jury.

WOOD, J., (after stating the facts.)  The argument of the attorneys was to the effect that Brock and Allgood had entered into a conspiracy to kill Parsons.  This argument was based on the testimony of the witness Humphreys.  The testimony of Humphreys was incompetent.  Appellant had not been charged with entering into a conspiracy with Allgood to kill Parsons, nor had there been any proof of such conspiracy. In the absence of such allegation or proof, it was collateral to the issue and wholly incompetent for the State to attempt to prove by witness Humphreys that Allgood told him he was present when Brock killed Parsons.  In order to avoid an interminable multiplication of issues, it is a settled rule of practice that when a witness is cross examined on a matter collateral to the issue, he can not, as to his answer, be subsequently contradicted by the party putting the question.  Wharton's Criminal Evidence, § 484;  *McAlister* v. *State*, 139 S. W. 684; 1 Greenleaf, Ev. § 449.  See *Drake* v. *State*, 29 Tex. App. 269. See *Williams* v. *State*, 19 So. 826.  The argument was improper and prejudicial.

The court also erred in permitting attorney Jones, in commenting upon instruction No. 5, set out in statement, to

say: "The instruction means that, the killing being proved, the burden of proving that he was justified in doing it is on the defendant; and if the defendant does not prove to your satisfaction that he is not guilty, you must convict him of murder." The remarks of the counsel, sanctioned by the court in its refusal to sustain an objection to them, were a misinterpretation of the instruction that had been given by the court, and were an incorrect statement of the law. It was a statement, too, in direct conflict with the instruction upon which the attorney was commenting.

The court correctly instructed the jury in the instruction that the burden rested upon the State to prove the crime charged, and that this burden did not, at any time, shift to the defendant, but, according to the construction which the attorney placed upon the instruction, with the sanction of the court, the jury were told in effect that, after the killing had been proved by the State, then the burden shifted to the defendant to prove that he was not guilty of the crime charged, and that he must make such proof, too, to the satisfaction of the jury. This was well calculated to confuse and mislead the jury, and to cause them to fail to understand the true meaning of the instruction.

The killing being proved, unless the evidence on the part of the State shows circumstances of mitigation, justification, or excuse, it devolves upon the appellant if he relies upon such circumstances to show them, but the burden is still on the State to show that the defendant is guilty of every grade or degree of crime included in the indictment. The burden, in other words, in a charge for murder, never shifts to the defendant, but always remains on the State. *Cogburn* v. *State*, 76 Ark. 110.

There was no prejudicial error in the court's refusing to allow the constable, Oliver Smith, to testify as to what was said to him when he surrendered and confessed to the killing. This offered testimony was fully covered by the appellant in his testimony on the witness stand, and he received the benefit of it. Appellant, therefore, could not have been prejudiced by the refusal of the court to admit the testimony.

The judgment is reversed, and the cause remanded for a new trial.