## NORMAN v. STATE.

### Opinion delivered June 30, 1924.

1. ASSAULT AND BATTERY—EVIDENCE.—Evidence *held* to sustain a conviction of aggravated assault.

2. CRIMINAL LAW — OPINION OF WITNESS.— In a prosecution for assault with intent to kill, where a witness was asked whether he could have recognized the prosecuting witness from defendant's car, his answer that he did recognize such witness from a position beyond defendant's car was admissible.

3. HOMICIDE—ERRONEOUS INSTRUCTION HARMLESS WHEN.—In a prosecution for assault with intent to kill, where the jury found defendant guilty of an aggravated assault, an instruction that "the killing being proved, the burden of showing circumstances of mitigation * * * shall devolve upon the accused," though erroneous, was harmless in view of the verdict of the jury.

Appeal from Yell Circuit Court, Danville District; *J. T. Bullock*, Judge; affirmed.

*Hays, Priddy & Hays*, for appellant.

*J. S. Utley*, Attorney General, and *John L. Carter*, Assistant, for appellee.

McCULLOCH, C. J. Appellant was indicted for the crime of assault with intent to kill, alleged to have been committed by shooting Lee Stewart, a deputy sheriff of Yell County. On the trial of the case appellant was convicted of aggravated assault, and his punishment fixed at a fine of one thousand dollars and imprisonment in the county jail for six months.

The shooting occurred in the early part of the night of October 26, 1923, on one of the streets of the town of Plainview, in Yell County. The State proved that appellant fired the shot at Stewart, which took effect in his leg, or thigh, and inflicted a dangerous wound, and the evidence was sufficient to support a verdict for the highest offense charged in the indictment.

A traveling salesman named Parks had the cushions stolen out of his automobile, and he applied to Stewart, the deputy sheriff, to assist him in searching for the lost articles and apprehending the guilty party. Suspicion rested on a certain young man who lived in the county,

near Plainview, and Parks and Stewart went out in a
Ford car to the place where the young man lived. Not
finding him or the stolen cushions, they started on the
return trip to town, and, after chasing another car, and,
being eluded by it, Stewart got out to stop some of the
cars that were passing along the road. It was then after
nightfall, when appellant's father came along in a car,
and Stewart waved a flashlight to him to stop, but the
car passed on, and appellant's father called Stewart's
name and cried out, "Look out, there!" and passed on.
Another car passed shortly afterwards. Stewart and
Parks went on to town and went by the house of appel-
lant's father to apologize for having endeavored to stop
his car. They called out to appellant's father, but got
no response, and drove around another street, and there
met appellant in his (appellant's) car. According to the
State's testimony, appellant drove over to the wrong
side of the road, and, when the cars got nearly together,
both of them stopped. Stewart and Parks both testified
that appellant got out of his car with his shotgun in his
hand, and that they both tried to explain to him the
circumstances about attempting to stop his father's car,
but that appellant refused to be pacified, and said to
Stewart, "I am going to kill you; I will learn you to
stay off of our business and let us alone." They testi-
fied that Stewart again attempted to explain the matter
to appellant, and that, as appellant presented his gun,
he (Stewart) took hold of the barrel and pulled it down,
and that at that time the gun fired and the load took
effect in Stewart's thigh. Stewart fell to the ground,
and spectators came up, having heard the noise, and the
witnesses who came up at that time testified that appel-
lant was in a rage, and cursed and abused Stewart.
One witness testified that, when he came up and saw
Stewart lying on the ground, he said, "Let's get the
man out of the dirt, not let him die in the dirt," and that
appellant exclaimed, "Let him die like a G—— d——
dog. The G—— d—— old grayheaded son of a bitch
ought to be dead and in hell years ago."

Appellant testified that he was driving behind his father's car when the attempt was made to stop the car by Stewart and Parks out on the road, and that, when he met Parks and Stewart's car in town, he thought an attempt was being made to hold him up, and that he did not intend to shoot Stewart. He testified that Stewart, after getting out of the car, grabbed hold of the gun-barrel and jerked it down, and that the gun went off accidentally. He said that he did not pull the trigger. This conflict in the testimony was settled by the verdict of the jury, and there was abundance of evidence to support the verdict.

According to the testimony adduced by the State, the shooting of Stewart by appellant was a most aggravated and unjustifiable offense; that, in a fit of anger, he shot a man who was attempting, in a polite and earnest way, to apologize for an apparent discourtesy to appellant's father.

Error is assigned in permitting witness Westlake to testify concerning the ability of appellant to recognize Stewart at the distance from one car to another. Westlake was one of the witnesses who came up immediately after the shooting. The testimony showed that the engines of both cars were running and the lights burning. After describing the scene and stating the distance, the witness was asked to state: "From the condition of the lights there, could a person have seen and recognized him from Bill Norman's car to where he was?" After objection was made, the question was changed to this: "Do you know whether a man could have seen him (Stewart) from Bill Norman's car?" The witness answered, "I recognized Bill Norman beyond Lee Stewart's car, yes. What I mean, I was behind Bill Norman's car when I came down there—his car in here. When I came out on this side I could recognize him over there." We see no valid objection to the competency of this testimony. It was impossible for the witness to describe to the jury the condition of the lights on the car, and there was no other way to carry to the jury the informa-

tion whether or not it was possible or probable that appellant recognized Stewart when the cars came close together and stopped. The testimony tended to contradict appellant in his statement that he did not recognize Stewart, and that he thought the men in the car were trying to hold him up.

Another assignment of error relates to the action of the court in giving the following instruction:

"The killing being proved, the burden of showing the circumstances of mitigation, or to justify or to excuse the homicide, shall devolve upon the accused, unless, by the proof on the part of the prosecution, it is sufficiently manifest that the offense, if death had resulted, would amount to no more than manslaughter, or that the accused was justified."

The court gave instructions properly defining the crime of assault with intent to kill, and, among other things, told the jury that, in order to make out that offense, it was essential that, if death had resulted from the assault, it would have constituted murder. The court then proceeded to charge the jury as to the law applicable to all degrees of homicide, and gave the instruction set forth above.

Appellant relies on the case of *Parsley* v. *State,* 148 Ark. 518, where we decided that the statute, substantially in the language of the instruction above, had no application on a trial for offenses other than homicide. That case was one where the accused was convicted of the crime of assault with intent to kill, and we held that the instruction was not only erroneous but was prejudicial. In the present case the appellant was not convicted of the higher offense involving a specific intent to kill, and therefore there could be no prejudice in giving the instruction. The assault and the effect thereof were abundantly established by testimony adduced by the State, and it devolved upon the appellant to show circumstances of mitigation or justification. The reference in the instructions to a homicide could have had no prejudicial effect, for it was not contended that death

resulted; on the contrary, Stewart, the injured party, was introduced and testified as a witness. It being obvious that the instruction could have had no prejudicial effect, its inapplicability to the facts of the case does not call for a reversal.

We find no prejudicial error in the record, and the judgment is therefore affirmed.