HOGAN *v.* STATE.

4780                                    272 S. W. 2d 312

Opinion delivered November 8, 1954.

*John I. Purtle,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. On an information charging him with the felony of assault with intent to kill (§ 41-606, Ark. Stats.), the appellant, Norman Hogan, was convicted of the misdemeanor of aggravated assault (§ 41-605, Ark. Stats.). He brings this appeal presenting *inter alia* the assignments herein discussed.

I. *Sufficiency of the Evidence.* Viewing the evidence in the light most favorable to the Jury verdict, as we do in appeal cases,[1] the following facts appear.

A. D. Hogan had a wife and five children. He beat his wife; and for protection she went home to her parents, Mr. and Mrs. Stell. Then the appellant, Norman Hogan, brother of A. D. Hogan, decided to "visit" his sister-in-law. Accompanied by his sister and his girl-friend, Norman Hogan drove over to the Stell home one night, ostensibly to get some papers from Mrs. A. D. Hogan; but in the visit, the remark was made to Mrs. A. D. Hogan: "Before this is over with there will be someone in worse shape than you." Animosity was also shown by other evidence. Finally, Norman Hogan and his two companions left the Stell home, but from his car on the roadside, Norman Hogan fired four shots from a hunting gun. Appellant testified that he fired at a chicken hawk there in the night; but other witnesses testified that the shots hit the Stell home and could have caused serious injuries to the occupants therein. Thus the evidence was sufficient to bring the case against Norman Hogan within the inhibition of the Statute on aggravated assault. *Allgood* v. *State,* 206 Ark. 699, 177 S. W. 2d 928; *Rice* v. *State,* 216 Ark. 817, 228 S. W. 2d 43; *Norman* v. *State,* 165 Ark. 142, 263 S. W. 391.

II. *Court's Refusal to Send Jury to the Scene.* The Trial Court refused the appellant's motion to send the Jury to the Stell house. Sec. 43-2119, Ark. Stats., gives the Trial Court discretion in this matter, and there was no abuse of discretion shown. *Whitley* v. *State,* 114 Ark. 243, 169 S. W. 952.

III. *Conduct of the Sheriff.* The appellant claims that "the Sheriff ad-libbed too much . . ." in the course of his testimony. By this assignment, the appellant refers to remarks made by the Sheriff when he identified the gun Norman Hogan used in shooting at the

---

[1] See *Allgood* v. *State,* 206 Ark. 699, 177 S. W. 2d 928, and cases there cited.

Stell house.[2]  Even if there had been a timely objection—
which there was not—still we see no error committed in
allowing the testimony of the Sheriff.  Particularly is
this true since Norman Hogan admitted that he put the
gun in his car before going to the Stell home, and also
admitted that he fired the gun that night.

IV.  *Conduct of the Prosecuting Attorney and As-
sistant.*  The appellant says: "The Prosecuting Attor-
ney and his assistant erred in sitting within three feet of
the Jury and talking in tones heard by the Jury."  The
record contains absolutely nothing to support this assign-
ment.  An objection like this comes too late when it is
first presented in the Motion for New Trial and no evi-
dence is ever taken to support it.  *Napier v. State,* 220
Ark. 208, 247 S. W. 2d 203; *Wimberly v. State,* 214 Ark.
930, 218 S. W. 2d 730.

V.  *Cross-Examination of Appellant as to Other
Crimes.*  The appellant testified in his own behalf: and
on cross-examination the Prosecuting Attorney asked
him if he had not been fined in the J. P. Court for some
offense (connected with a gun), and if he had not dis-
missed his appeal of that case in the Circuit Court.  The
appellant answered: "I don't know whether I did or
not.  I haven't checked with the lawyer to see what was
paid."  This question and answer related to a conviction,
and not to a mere charge.  There was no objection to the

---

2 We set out the testimony on the point:
"Q.  I will ask you if you have seen the gun before?
"A.  I have.
"Q.  How long have you had it in your possession?
"A.  When?
"Q.  Prior to this incident?
"A.  I would say some five or six months.
"Q.  Who did you turn the gun over to?
"A.  We turned the gun over to Mr. Hogan's father, father of
Norman and A. D. Hogan.  He said he wanted to go deer hunting and
we released the gun to him.
"Q.  Do you know who the gun belongs to?
"A.  We originally took the gun from Norman and A. D. Hogan.
"Q.  What kind of a gun is it?
"A.  That is a pump shot gun, Winchester, about a 20- or 21-inch
barrel.  It has the mark U. S. on it, twelve gauge.
"Q.  Did you take anything else into your possession that night?
"A.  Three empty shot gun shells which Danny Nell. Hogan
turned over to deputy Wilburn Carter in my presence, also took one
number 'ought' buck shot shell,  . . ."

answer, and the questions of the Prosecuting Attorney were then directed to other matters. We find no objection made and see no error committed.

### Conclusion.

There are other assignments which we have studied and find to be without merit.

Affirmed.