## JOHNSON *v.* STATE.

## Opinion delivered October 4, 1915.

1. HOMICIDE—SUFFICIENCY OF THE EVIDENCE.—In a prosecution for homicide, when defendant admitted having "knifed" the deceased, and it appearing that deceased was killed at a certain place, where defendant also was, *held* there was sufficient evidence to warrant a submission of the issue of defendant's guilt.

2. EVIDENCE—HOMICIDE—INTENT.—In a prosecution for homicide, when it appeared that defendant and one H. went to see deceased with reference to certain things that deceased was reported to have said about H's wife, evidence was admissible to prove that the night deceased was killed, that H. had a pistol in his possession.

3. HOMICIDE—MITIGATION—BURDEN OF PROOF.—Where the homicide has been proved, the burden of proving circumstances of mitigation that justify or excuse the homicide, devolves upon the accused, unless by proof upon the part of the prosecution it is sufficiently manifest that the offense amounted only to manslaughter, or the accused was justified or excused in committing the homicide.

4. HOMICIDE—SELF-DEFENSE.—In a prosecution for homicide, two instructions held to be proper on the issue of self-defense, when, taken together, they properly state the law on that question.

5. WITNESSES—CREDIBILITY—QUESTION FOR JURY.—An instruction that "if you believe any witness has wilfully sworn falsely to any material fact in this case, you may disregard his whole testimony or believe what you regard to be true and disbelieve what you regard to be false," while not drawn in apt language, will, if given, not constitute reversible error, when the giving of the same was not specifically objected to.

6. JURY—OPINION—DISCRETION OF COURT.—In a criminal prosecution, *held*, the trial court did not abuse its discretion in refusing to grant a new trial on the ground that two jurors were prejudiced and biased against defendant.

Appeal from Cleveland Circuit Court; *Turner Butler,* Judge; affirmed.

STATEMENT BY THE COURT.

On the night of April 22, 1914, Frank Armstrong was killed by appellant in Cleveland County, Arkansas.

Armstrong, after a hard day's work, being very tired, had retired early. Carroll Hopson had heard that Armstrong had been making some derogatory remarks about his (Hopson's) wife. Hopson had married the appellant's sister. Hopson, in company with the appellant, Bud Miller and Coot Childers, on the night of the killing, started to the home of Armstrong for the purpose of seeing him in regard to what he was reported to have said concerning Mrs. Hopson. When they got within one hundred yards of the house, all stopped except Carroll Hopson. He went on up to Armstrong's house. He called to Armstrong, stating that he wanted to see him, whereupon, Armstrong arose and dressed and went with Hopson to where others of the party were. This was about 9 o'clock at night. About two hours later Armstrong was found dead in the road near his home. His body was lying near a thicket in a dense part of the woods. His left arm was stabbed, all the muscle on same being cut, and the arm was broken above the elbow; it was a smooth break. There was another wound also on the left arm and a wound on the left side and another wound on the ninth rib. The body was badly cut, and was covered with blood.

There was testimony to the effect that on the day before the killing, appellant said that he went over to have a talk with Armstrong about remarks that Armstrong had been making about his (appellant's) people. He said, "I did not hit him but once." Again, he said, "I thought that I hit him only once or twice." Appellant made further statements to the effect that Armstrong had "knifed" him and that he had "knifed" Armstrong.

There was testimony on behalf of appellant tending to prove that he and Armstrong were good friends, and that they were neighbors; that Carroll Hopson, appellant's brother-in-law, told appellant on the night of the killing that he was going to see Armstrong to get him to quit talking about his wife; that appellant told Hopson that he would go with him, and did go; that he and Hopson and Miller and Childers went up near Armstrong's house, and when Carroll Hopson and Armstrong returned to where appellant and the others were waiting, Hopson

accused Armstrong of making statements about his wife. Armstrong denied having made the statements attributed to him, and there was some controversy over the matter, in which the appellant participated, and during the conversation appellant said, "Since you admit talking about my people, I want you to quit tagging after my children when you are passing my house, and I don't want you to come on my place any more." To this Armstrong replied: "You God-damned little devil, you must think I am afraid of you," and started at appellant, whereupon the fight ensued, and shortly afterward Armstrong said, "Take him off boys, he has cut me to pieces." Appellant then turned and walked away; said he was hurt and was going home. Appellant sustained a severe knife wound in his shoulder, which was about three inches in width under the surface, and as a result of which appellant was confined to his bed several days.

Appellant stated that he did not go over there with murder in his heart or to abuse Armstrong, and was going to let the matter pass if Armstrong would quit talking about his sister. He thought because they were members of the same Woodman lodge, he could get him to quit talking the way he had been doing.

An open knife was found sticking in the ground near Armstrong's head. The knife was a large-sized barlow.

The indictment charged appellant with the crime of murder in the first degree in the killing of Frank Armstrong. No objection is urged to the sufficiency of the indictment. Appellant was convicted of the crime of murder in the second degree and was sentenced to twenty-one years in the State penitentiary. He duly prosecutes this appeal. Other facts will be stated in the opinion as we discuss the assignments of error which appellant urges as grounds for a reversal of the judgment.

*H. S. Powell* and *Paul G. Matlock*, for appellant.

1. The court erred in refusing to grant the peremptory instruction requested by appellant. Proof of the *corpus delicti*, together with the admissions of the defendant were not sufficient to sustain a conviction for any

degree of homicide. The statements made by appellant did not amount to a confession, but only an admission of participation in the crime. An admission is distinguished from a confession. See 30 Calif. 157; Greenleaf on Ev., volume 1, page 170; Enc. of Ev., volume 3, page 298.

2. The evidence of witness Mosely was inadmissible as it tended to impeach the testimony of witness Hopson on a collateral matter. 16 Ark. 568; 36 Pac. 73; 101 Ark. 153.

3. Instruction 5 is erroneous in that it tells the jury that notwithstanding the mitigating circumstances proven by the State, the burden was on defendant to establish his innocence. 76 Ark. 113; 101 Ark. 153.

4. Instruction 12 was erroneous in that it gave the jury the right to say whether or not appellant's danger was urgent and pressing, whereas they should have been told that if the defendant believed at the time of the killing that he was in danger of death or receiving great bodily harm, that the killing was justified. 67 Ark. 594; 59 Ark. 132. This instruction is in conflict with defendant's instruction No. 3. An erroneous instruction is not cured by a correct one on the same subject. 85 Ark. 52; 93 Ark. 573.

5. Instruction 14 was error, because it told the jury that they might disregard the testimony of a witness which they believed to be true, if they found that such witness had testified falsely in part. 82 Ark. 545.

6. Instruction 15 is error because it leaves out of consideration the defense of apprehension of danger.

7. The integrity of the jury was violated in that two of the jurors were prejudiced against appellant, and the State, after attacks on their competency, only had these jurors deny the statements attributed to them.

8. The verdict is not sustained by the evidence.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. Instructions 1-6, inclusive, are copies of sections 1761-1766, Kirby's Digest, and instructions 11 and 12 are copies of sections 1797, 1798, of Kirby's Digest.

2.   Instruction 14 on credibility of witnesses was approved in 85 Ark. 64-70.

3.   Instruction 15 has been approved in following cases:   68 Ark. 268; 95 *Id.* 428-431; 99 *Id.* 576-580; 104 *Id.* 394-408; 110 *Id.* 410-415; 117 Ark. 233.

Instruction No. 3 for appellant was correctly modified.   104 Ark. 345; Kirby's Digest, 1797.

5.   There was no error in admitting the evidence of witnesses Mosely *et al.*, as by instruction No. 6, asked by appellant, their testimony was limited to the purpose of impeachment.

6.   There was no error concerning the bias of jurors. 85 Ark. 64.

7.   The judgment should be affirmed.

Wood, J., (after stating the facts).  (1)  The appellant contends that the court erred in not instructing the jury, at the close of the evidence on behalf of the State, to return a verdict of not guilty.  The court did not err in this ruling.

The testimony on behalf of the State tended to show that Armstrong was killed on the night of April 22, 1914, and that he was killed by a knife in the hands of some third party.  The identity of the appellant was established by his admission to the effect that on that night he had cut Armstrong with a knife.  The circumstances adduced on the part of the State tending to show that Armstrong, after he had retired for the night, was called from his bed and requested to go to the place where he was killed, and the manner in which he was killed as indicated by the numerous wounds he had received, were sufficient of themselves to warrant the jury in finding that there was an unlawful killing.  The *corpus delicti* being thus established and appellant having admitted that he was the one who "knifed" Armstrong, it then devolved upon him to prove circumstances of mitigation, that justified or excused the homicide, there being no proof on the part of the State which made it sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the

homicide. Kirby's Digest, section 1765; *Brock* v. *State,* 101 Ark. 147-154.

(2) Carroll Hopson, a witness on behalf of the appellant, was asked on cross-examination, this question: "Do you know a negro named John Mosely?" and answered, "Yes." He was then asked: "What did you want with his pistol the day before the killing?" and answered, "I didn't have it." He further testified, in answer to questions, that Mosely did not get any pistol from him the day after the killing; that he did not have Mosely's pistol a day or two before the killing, nor any time that year.

John Mosely testified in rebuttal that on the night that Armstrong was killed, Carroll Hopson had his (Mosely's) pistol; that he brought it home the next morning. The appellant moved the court to exclude the testimony of John Mosely. The court overruled the motion.

The court did not err in this ruling. The testimony of Mosely was competent as original evidence. It tended to establish the fact that on the night of the killing, Hopson was armed with a pistol. Now, the jury were warranted in inferring that appellant and Hopson, on the night of the killing, had entered into a conspiracy to see Armstrong, and in case he did not make satisfactory explanation in regard to the alleged defamatory remarks attributed to him concerning the wife of Carroll Hopson to do him personal violence.

Hopson testified, on cross-examination, "I intended to go to see deceased, and if he made it right about talking about my wife, I intended to drop it, and if he had not made it right, I had not made up my mind as to what I was going to do." Hopson further testified, "Deceased had been doing some talking, and we wanted to see him about it" And, again, "I knew the fight was about what deceased had said about my wife."

The appellant himself testified, "Hopson came to my house that night and brought his wife and told me that he was going over to see deceased to get him to quit talking about his wife. I told him that I would go with him."

Although, witness Hopson and the appellant, in their testimony, say that on the night of the killing, there were

on good terms with deceased and disclaimed any ill will toward him, and deny any intention of doing him any violence on the occasion, the above testimony, together with other facts and circumstances in evidence. were sufficient to warrant the jury in finding otherwise, and that their visit to the home of Armstrong on that occasion was not a friendly one. Therefore, the court was warranted in admitting any evidence to prove that on the night of the killing, Hopson had a pistol. The testimony was not concerning a collateral issue, but was relevant to the issue being tried, and therefore competent either on direct or cross-examination.

(3)　The court, at the request of the State, gave instruction No. 5, as follows: "The killing having been proven, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the accused, unless by proof upon the part of the prosecution it is sufficiently manifest that the offense amounted only to manslaughter, or that the accused was justified or excused in committing the homicide."

The above is taken from Kirby's Digest, section 1765. Speaking of an instruction in this language in *Cogburn* v. *State,* 76 Ark. 110-112, we said: "This section of the statute, it will be seen, is a rule of law to be applied when the killing has been proved, and there is nothing shown to justify or excuse said act."

The court, in the above case, declared that there was no error in the giving of the above instruction. By reference to the facts stated in the opinion, it will be seen that several witnesses for the State in that case testified that at the time of the shooting the deceased was making no hostile demonstration whatever toward the appellant Cogburn, and several witnesses testified on behalf of the defendant that the deceased and another in company with him were making hostile demonstrations toward the appellant, and that the appellant shot the deceased West after West had fired at him with a pistol. The court, in that case, while approving the instruction, condemned and held erroneous the argument of counsel for the State which misconstrued the meaning of the instruction, and

which, in effect, told the jury that after the State had proved the killing, the burden was upon the defendant to establish justification, and if the defendant failed to satisfy the jury by a preponderance of the evidence that the killing was justifiable, the jury should convict him. In other words, the explanation of the instruction given by the attorney was to tell the jury that after the State had established the killing, the burden shifted to the defendant to show by a preponderance of the evidence that he was innocent of the crime.

In *Brock* v. *State,* 101 Ark. 147, remarks having the same effect were made in commenting upon language similar to that contained in the instruction under consideration. The court, in condemning these remarks, said: "The remarks of the counsel, sanctioned by the court in its refusal to sustain an objection to them, were a misinterpretation of the instruction that had been given by the court, and were an incorrect statement of the law." The court, however, in holding that the instruction itself was correct, used this language: "The court correctly instructed the jury in the instruction that the burden rested upon the State to prove the crime charged, and that this burden did not, at any time, shift to the defendant. * * * The killing being proved, unless the evidence on the part of the State shows circumstances of mitigation, justification or excuse, it devolves upon the appellant if he relies upon such circumstances to show them, but the burden is still on the State to show that the defendant is guilty of every grade or degree of crime included in the indictment. The burden, in other words, in a charge for murder, never shifts to the defendant, but always remains on the State."

An examination of the statements of fact in the above cases will discover that an instruction similar to the one under review is not erroneous when applied in cases where the evidence on the part of the defendant tends to show mitigation, justification or excuse. The error for which the judgments were reversed in the above cases was caused by the remarks of counsel in placing a misleading and erroneous construction upon the language of

the statute. In the case at bar, no such error was committed, and the instruction itself is not calculated to mislead a jury as learned counsel for appellant contend, but has only the meaning that was placed upon it in *Cogburn* v. *State, supra,* and *Brock* v. *State, supra.* In both cases, the court clearly announces that under such an instruction in a charge for murder, the burden of proof never shifts to the defendant to establish his innocence by a preponderance of the evidence on any phase of the testimony, but that, on the contrary, after all the testimony, both for the State and the defendant, has been adduced the burden still remains on the State throughout the whole case to establish the crime charged beyond a reasonable doubt. As was said by Judge Riddick in *Cogburn* v. *State, supra,* "While it is true, as our statute declares, that when the killing is proved, the burden of showing circumstances that mitigate or excuse the crime devolves upon the accused, where there is nothing in the evidence on the part of the State that tends to mitigate, excuse or justify the killing, still the burden on the whole case is on the State; and when evidence is introduced, either on the part of the State or the defendant, which tends to justify or excuse the act of the defendant, then if such evidence, in connection with the other evidence in the case, raises in the minds of the jury a reasonable doubt as to the guilt of the defendant, the jury must acquit."

(4) The appellant contends that the court erred in giving instruction No. 12, as follows: "In ordinary cases of one person killing another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily injury, or to prevent the commission of the felony feared by him, the killing of the other was necessary; and it must also appear that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further contest before the mortal blow or injury was given."

In instruction No. 3, given at the instance of the appellant, the court told the jury, in effect, that if, at the time the defendant stabbed the deceased, he had reason-

able cause to apprehend great bodily injury at the hands of deceased, and if at the time he had reasonable grounds to believe, and did believe, it necessary for him to use the knife as he did, and that he acted without previous fault or carelessness on his part, that the killing was justifiable; that it was not necessary that the danger to the appellant should have been actual or real; that it was sufficient if the defendant had reasonable cause to believe that he was in danger of death or great bodily harm, and that if he acted under such belief, and not in a spirit of malice or revenge he would be justified.

The instructions taken together correctly declared the law. Instruction No. 12 was a copy of the statute, section 1798 of Kirby's Digest, and announced a rule of law applicable in cases where self-defense is interposed. It told the jury, in general terms, that it must appear that the danger was so urgent and pressing, etc. But the instruction does not explain to whom it must appear.

Instruction No. 3 was a correct explanation of instruction No. 12 as to whom the danger must appear to be urgent and pressing, telling the jury, in effect, that it must so appear to the defendant.

There is no conflict between these instructions, but, on the contrary, when they are considered together, as they must be, they correctly declare the law in conformity with the decisions of this court in *Smith* v. *State*, 59 Ark. 132, and *Magness* v. *State*, 67 Ark. 594.

(5) Appellant complains because, in instruction No. 14, the court told the jury, in part, "If you believe any witness has wilfully sworn falsely to any material fact in this case, you may disregard his whole testimony or believe what you regard to be true and disbelieve what you regard to be false"

Instructions containing similar language were criticised in the case of *Frazier* v *State*, 56 Ark. 242, and *Taylor* v. *State*, 82 Ark. 540. But while condemning instructions couched in this language, the court in neither of the above cases held that the giving of such an instruction would constitute reversible error.

In the case of *Frazier* v. *State,* notwithstanding the instruction, the court announced that as there was "absolutely no proof of venue, the judgment must be reversed and the cause remanded." And in *Taylor* v. *State,* after criticising the instruction as not being an accurate statement of the law, says: "But while this instruction is not strictly correct, there is no objection to it, and the language was probably the result of inadvertence or oversight which did no harm."

In the instant case, no specific objection was made to the instruction. The court's attention was not called to any particular defects in it. As was said in the last of the above cases, "The language used was probably the result of inadvertence or oversight and did no harm."

In the recent case of *Burgess* v. *State,* 108 Ark. 508, appellant's counsel contended that that case should be reversed because an instruction was given in that case, which, in effect, told the jury, "that if any part of the statement of the witness is wilfully false, they may disregard it all, even though they may believe a portion of it to be true." Answering this contention of counsel, the court said: "The instruction does not authorize the jury to disregard any part of it believed to be true, but, if it is open to that construction, that fact should have been called to the attention of the court." So we say here.

The instruction was one concerning the province of the jury in weighing the evidence and in passing upon the credibilty of the witnesses, pointing out somewhat at length the duty of the jury in that regard. While the instruction was not aptly framed, it announced several propositions of law which were undoubtedly correct, and which have often been approved by the decisions of this court; and the particular proposition which appellant now claims was erroneous and prejudicial should therefore have been specifically called to the attention of the trial judge, and if this had been done, there is no doubt but what the court would have framed the instruction so as to conform strictly to the rulings of this court in former decisions criticising the particular verbiage to which objection is now here for the first time offered.

(6)  Appellant, in his amended motion for a new trial, challenges the qualifications of two of the jurors, alleging that they had formed and expressed an opinion as to the guilt or innocence of the accused, and that they were biased and prejudiced against him, and alleging that appellant had no opportunity to discover otherwise until after the verdict was rendered.

Appellant adduced affidavits tending to support the allegations of the motion, and testimony of the jurors was offered in rebuttal.  We have carefully examined this evidence as set forth in the record, and can not say that the court erred in holding that the jurors were qualified. It presented a question of fact for the trial court, and we do not feel authorized to disturb its finding. On this point the case is ruled by *Decker* v. *State,* 85 Ark. 64-72.

The record presents no prejudicial error and the judgment is therefore affirmed.