PARSLEY v. STATE.

Opinion delivered May 16, 1921.

1. HOMICIDE—ASSAULT WITH INTENT TO KILL—BURDEN OF PROOF.— Crawford & Moses' Dig., § 2342, providing that in homicide cases if the killing is established the burden of proving mitigating circumstances justifying or excusing the homicide shall devolve on accused, has no application in a case of assault with intent to kill, and the burden is on the State to prove every allegation of the indictment beyond a reasonable doubt.

2. HOMICIDE—BURDEN OF PROOF—INSTRUCTION.—It is improper in a murder case to charge that it devolves on defendant to prove circumstances in mitigation or justification without adding the statutory qualification "unless by the proof on the part of the prosecution it is sufficiently manifest that the offense was manslaughter

or that the accused was justified or excused in committing the homicide," or without stating that the burden on the whole case rests on the State.

3. CRIMINAL LAW—INSTRUCTION—GENERAL OBJECTION.—On a trial for assault with intent to kill, a general objection to an instruction placing the burden on plaintiff to prove circumstances in mitigation or justification was sufficient.

4. HOMICIDE—ASSAULT TO KILL—JUSTIFICATION.—Language, however insulting or slanderous, does not justify an assault.

5. HOMICIDE—ABUSIVE LANGUAGE AS JUSTIFICATION.—On a trial of an assault with intent to kill, it would have been correct to tell the jury that, if defendant fired the shot merely because of abusive language and without any assault or overt act, he would be guilty of the offense charged.

6. HOMICIDE—THREATENING ATTITUDE OF PERSON ASSAULTED.—If the prosecuting witness used abusive language toward defendant and was advancing on him in a threatening attitude when the latter fired the shots, so as to lead defendant to believe that his life was in danger, or to arouse a sudden, irresistible passion, this would reduce the grade of the offense, even though shooting was not justified.

7. HOMICIDE—ASSAULT TO KILL.—In order to constitute the crime of assault with intent to kill, the evidence must be such as to warrant a conviction of murder if death had ensued, and there must have been a specific intent to kill.

8. HOMICIDE—ASSAULT TO KILL—INSTRUCTION.—On a trial for assault with intent to kill, defendant was entitled to an instruction that, if the assault was committed upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible, so that the offense would have been manslaughter if death had ensued, he would not be guilty of the offense charged.

9. HOMICIDE—ASSAULT TO KILL—INSTRUCTION.—On a trial for assault with intent to kill, an instruction that if the assault was committed by defendant while acting under the influence of passion or excitement caused by provocation apparently sufficient to make the passion irresistible, defendant should be acquitted, was properly refused, since, though the assault was made under those circumstances, this would not justify it, but would only reduce it to a lower grade.

Appeal from Lonoke Circuit Court; *George W. Clark.* Judge; reversed.

*Williams & Holloway* and *Trimble & Trimble,* for appellant.

1. The court erred in its instructions. They as a whole fail to give the defendant's theory of the case, and do nòt correctly define the law of self-defense. 179 S. W. 1013; 100 Ark. 209; 161 S. W. 186; 91 Ark. 582; 100 *Id.* 132; 85 *Id.* 179; 121 S. W. 1070; 107 *Id.* 677.

2. It was error to give the oral instruction. Constitution, art. 7, § 23, and cases cited; 139 S. W. 289. The exception to same was properly taken. 95 Ark. 71; 128 S. W. 562; 16 *Id.* 1081. See, also, 58 Ark. 277; 78 *Id.* 132.

*J. S. Utley*, Attorney General, and *Elbert Godwin* and *W. T. Hammock*, Assistants, for appellee.

There was no error in the instructions given or refused, and no proper exceptions were saved. 101 Ark. 95. The controverting affidavits were not filed in time to make them part of the record. 87 Ark. 463; 95 *Id.* 72.

McCULLOCH, C. J. Appellant was convicted of the crime of assault with intent to kill, committed by shooting and wounding Frank Gassoway. The alleged assault was committed in the town of England, Lonoke County, where both of the parties to the encounter resided. They had been on bad terms for several years, and in July, 1920, about a month before the shooting occurred, Gassoway went to Faulkner County on a visit to his father and remained there about a month. He returned to England a day or two before the assault occurred and heard of a report being circulated about him to the effect that he had been confined in jail in Faulkner County on a charge of stealing an automobile. Gassoway traced this report, as he claimed, back to appellant's wife, and he went to see appellant about it, but the latter claimed that neither he nor his wife were responsible for the report. There was abusive language passed between the two parties in regard to this incident, and appellant went into his house and came out with his shotgun and threatened to shoot Gassoway. They were both arrested and tried before the mayor for disturbing the peace, and during the trial there were manifestations of bad feeling between them. The trial before the mayor occurred early

in the morning, and about 5:30 o'clock on the same afternoon the parties met in front of a livery stable and the controversy between them concerning the rumor about Gassoway having been in jail again arose and rough language was again used by each of the parties.

Gassoway testified that he went over to the livery stable and found appellant and one Sheridan sitting on a bench in front of the stable; that appellant got up and said: ''Whoever told you I said that told a damn lie,'' and started to walk away when he (witness) spoke to appellant, saying, ''You could be too fast; you could be a damn liar yourself;'' that appellant turned and drew his pistol and said, ''You are always making a gun play. That isn't the first time you have, and, God damn you, I am going to kill you if I go to hell in three minutes.'' He testified that at appellant's first attempt to fire the gun the charge did not explode, and that he (witness) said, ''Parsley, don't shoot me,'' and that appellant replied, ''God damn you, I am going to kill you,'' and continued to shoot as the witness backed away. There were two or three shots fired, and Gassoway was severely wounded, being shot through the arm and through the liver and lungs. His left arm was broken, and his left leg was shot through. Gassoway testified that he was not making any demonstrations toward appellant at the time the latter fired the shots.

Appellant testified concerning the prior trouble with Gassoway and also gave the details of the final encounter between them which resulted in his shooting Gassoway. He testified that he and Sheridan were sitting on a bench in front of the livery stable when Gassoway came up; that he and Sheridan were discussing the alleged report about Gassoway at the time the latter came up, and that Gassoway inquired what they were talking about, and he answered that they were talking about the report, and that he had had nothing to do with it; that he got up from the bench and started away, and as he started appellant said, ''Wait a minute, you God-damn lying son-of-

a-bitch, you told it;" that he (appellant) turned around and saw that Gassoway was advancing toward him with his hand under his arm, and that Gassoway said, "Get your gun, you cowardly son-of-a-bitch, you haven't got nerve enough to use it." He testified that he thought Gassoway was attempting to draw his gun from under his arm, and that he began firing and shot three times. There were numerous other witnesses in the case, some of whom corroborated Gassoway and some corrobrated appellant, and there were several versions of the affair.

Among the numerous instructions given by the court the following was given over appellant's objections:

"You are instructed that the defense relied on in this case is self-defense, that is, that the defendant contends that the reason he shot Gassoway was that it was necessary to shoot the witness Gassoway in order to save his own life, or prevent Gassoway from inflicting a serious bodily injury upon him. This is a legal defense under the law if established, and the burden of proving same is upon the defendant, but, before the law of self-defense can be invoked, the defendant must be without fault or carelessness upon his part in provoking the difficulty, and must have used all means within his power consistent with his safety to avoid the danger, and avert the necessity of taking human life. And you are further instructed that the law of self-defense begins in necessity and ends in necessity; if the defendant could with safety to himself [have] avoided this difficulty, and failed or refused to do so, then the law of self-defense can not avail him."

In an oral instruction subsequently given the court also reiterated the statement that, appellant having admitted the shooting and also that he intended to kill Gassoway, the burden was on him to prove that the shooting was justifiable. We are of the opinion that this instruction was erroneous and calls for a reversal of the judgment. There is a statute which provides that in homicide cases, if the killing be established, "the burden of proving circumstances of mitigation that justify or ex-

cuse the homicide shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide." Crawford & Moses' Digest, § 2342.

This statute, however, has no application to the trial of any offense except homicide. It is improper, therefore, to give this statute, either in form or substance, in any other kind of case, for the burden is on the State to prove beyond a reasonable doubt every allegation in the indictment. Even in cases which fall within the statute, it is improper to instruct the jury that it devolves upon the defendant to prove circumstances in mitigation or justification without stating the further qualifications contained in the statute "unless, by the proof on the part of the prosecution, it is sufficiently manifest," etc., or without stating that the burden of the whole case rests upon the State. *Cogburn* v. *State,* 76 Ark. 110; *Tignor* v. *State,* 76 Ark. 489; *Childs* v. *State,* 98 Ark. 430. The objection made to the instruction was general, but we think that no specific objection was required.

The giving of the following instruction is also assigned as error:

"You are instructed that words, be they ever so insulting or slanderous, can not justify even a simple assault, and you are instructed, if you find from the evidence or circumstances that, because of any insulting or abusive language used by Gassoway, the defendant shot him, and at the time he shot the said Gassoway he intended to take his life, you will find the defendant guilty of an assault with intent to kill and fix his punishment at some period of not less than one or more than twenty-one years at hard labor in the penitentiary."

This instruction is in bad form, but it is unnecessary to determine whether it is prejudicial. The first part of the instruction is correct in saying that language, however insulting or slanderous, does not justify an assault, and it would have been correct to tell the jury that if

appellant fired the shot with intent to kill merely because of abusive language on the part of Gassoway and without any assault or other overt act, appellant would be guilty of the offense charged; but it is doubtful whether the jury understood this instruction to mean that it is only in the absence of such overt act that abusive language will not reduce the grade of an offense below assault with intent to kill.

There was testimony in the case tending to show that Gassoway used abusive language toward appellant, and that he was advancing on appellant in a threatening attitude, when the latter fired the shots; and if the jury believed that to be true, then appellant was not necessarily guilty of assault with intent to kill, even though the shooting was unjustified. In other words, if the jury found that there was such a threatening attitude on the part of Gassoway as to lead appellant to believe that his life was in danger, or to arouse a sudden, irresistible passion, this would reduce the grade of the offense. To say the least of it, this instruction was confusing, and we call attention to it in view of another trial without determining whether or not it constitutes reversible error.

The court's refusal to give the following instructions is separately assigned:

"No. 1. The jury are instructed if you find from the evidence in this case that the assault was committed by the defendant while acting under the influence of passion or excitement, caused by provocation apparently sufficiently to make the passion irresistible, defendant should be acquitted."

"No. 2. The jury are instructed that if you find from the evidence the defendant at the time he assaulted the prosecuting witness, by his acts and conduct, caused the defendant to honestly believe, without fault or carelessness on his part, that he was in danger of great bodily harm, and that in order to protect himself from such bodily harm, then the defendant would have the right to protect himself even in shooting his assailant."

In order to constitute the crime of assault with intent to kill, the evidence must be such as to warrant a conviction of murder, if death had ensued from the assault, and there must have been a specific intent to kill. *Lacefield* v. *State,* 34 Ark. 275; *Davis* v. *State,* 115 Ark. 566. Appellant was therefore entitled to an instruction telling the jury that if the assault was committed "upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible," so that the offense would have been reduced to manslaughter if death had ensued, then he would not have been guilty of assault with intent to kill. However, the instruction requested by appellant was not in correct form, and the court properly refused to give it. In the first place, the instruction does not follow the language of the statute, Crawford & Moses' Digest, § 2355. In the next place, it is erroneous in telling the jury that, if the assault was made under those circumstances, appellant should be acquitted. The indictment embraced the lower degrees of assault, and, even though the assault was made upon a sudden heat of passion, this would not justify it, but would only reduce it to a grade lower than assault with intent to kill.

Instruction No. 2 was correct, but it seems to have been covered by another instruction given by the court on its own motion.

For the error found in instruction No. 1 the judgment is reversed and the cause remanded for a new trial.