BLACK *v.* STATE.

Opinion delivered May 31, 1926.

1. HOMICIDE—SELF-DEFENSE—INSTRUCTION AS TO BURDEN OF PROOF.—
   In a prosecution for murder, where the killing by defendant was
   admitted, a charge to the jury that the burden of proving cir-
   cumstances of mitigation that justify or excuse the homicide
   shall devolve upon the accused, "unless the proof on the part of
   the State shows that the offense committed only amounted to
   manslaughter," was defective in omitting the further qualifica-
   tion, "or that the accused was justified or excused in committing
   the homicide," contained in Crawford & Moses' Dig., § 2342.

2. HOMICIDE—INSTRUCTIONS AS TO SELF-DEFENSE.—In a murder case
   where the court instructed that, when the killing is proved, the
   burden of showing justification is on the defendant unless the
   State's proof shows that the killing was manslaughter, the error
   of omitting to state the other qualification as to self-defense
   was not prejudicial where other instructions covered the doctrine
   of self-defense and the verdict was merely voluntary man-
   slaughter.

3. CRIMINAL LAW—REPETITION OF INSTRUCTIONS.—It was not error
   to refuse instructions covered by others given by the court.

4. CRIMINAL LAW—INSTRUCTION—PRESUMPTION OF INNOCENCE.—An
   instruction that the presumption of innocence attends the accused
   throughout the trial until overcome by evidence establishing his
   guilt beyond a reasonable doubt *held* not erroneous.

5. HOMICIDE—INSTRUCTIONS AS TO INVOLUNTARY MANSLAUGHTER.—
   Where, in a murder case, the defense was based upon the theory
   that accused was defending himself against a murderous assault,
   and proper instructions were given as to the law of self-defense,
   it was not error to refuse to give an instruction as to involuntary
   manslaughter, as the jury would have acquitted him, had they
   believed his testimony, instead of convicting him of voluntary
   manslaughter.

Appeal from Arkansas Circuit Court, Southern
District; *George W. Clark,* Judge; affirmed.

*Botts & O'Daniel*, for appellant.

*H. W. Applegate*, Attorney General, and *Darden Moose*, Assistant, for appellee.

SMITH, J.    Appellant was tried under an indictment which charged him with the crime of murder in the first degree, alleged to have been committed by slashing, stabbing, striking and cutting one Frank Jenkins with a knife.    He was found guilty of voluntary manslaughter and given a sentence of two years in the penitentiary.

It is insisted for the reversal of the judgment of the court below that the undisputed testimony shows that appellant killed the deceased in necessary self-defense, and it may be said that the testimony of the persons present when the killing occurred and who saw the killing does tend strongly to show that the killing was done in self-defense, but there were contradictions in the testimony of these witnesses which warranted the jury in disregarding much of it.

The testimony on the part of the State showed the killing of deceased by appellant and the condition of deceased's body after he was killed.    There were knife wounds in deceased's neck, breast, right leg, three in the back, two in the neck, and knife cuts inside of both hands, and a bruise on the left side of the head, which indicated that deceased had been hit with a club of some kind.    A doctor who examined the body testified that at least two of the wounds were mortal.    Other testimony on the part of the State would indicate that both appellant and deceased and the other persons present were all more or less intoxicated when the killing occurred.

On the part of appellant testimony to the following effect was offered: Jenkins, the deceased, had been drinking, and became angry with appellant, and said he was going to kill appellant, who was a much smaller man than Jenkins.    Jenkins picked up a piece of post and struck appellant with it, and ran appellant under a ladder which was leaning against a house near which the parties were standing when the quarrel began.    When appellant ran under the ladder, Jenkins threw down the

post and picked up a piece of 1 x 4 slab, which was of oak, and ran around the ladder after appellant, and then turned and ran the other way, and grabbed appellant's right hand and pulled him from under the ladder, and struck him with the slab, and knocked appellant to his knees, whereupon appellant opened his knife with his teeth and commenced cutting Jenkins, and continued cutting him until he fell.

The court gave, over appellant's objection, instruction numbered 2, which reads as follows:

"The killing being proved, the burden of proving justification or excusable homicide shall devolve upon the accused, unless the proof upon the part of the State shows that the killing only amounted to manslaughter. If the evidence shows that the killing only amounted to manslaughter, which I will more fully explain to you later on, then the burden continues upon the State during the entire investigation, but, if the evidence shows that the killing was unlawful, willful, and done with malice on the part of the party doing the killing, then the burden shifts from the State to the defendant, and the burden is upon him to show that it was done justifiably or excusably.

"The killing being proved and done with a deadly or dangerous weapon, the law implies malice, and the State is not required to establish the crime of murder in the second degree. If the killing was unlawful and done with malice, then there can be no conviction in this case for less than murder in the second degree.

"Malice shall be implied when no considerable provocation appears, or when all of the circumstances of the killing imply an abandoned and wicked disposition upon the part of the slayer. Express malice is that deliberate intention of mind unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.

"I have previously told you that manslaughter is the unlawful killing of a human being without malice, express or implied, and without deliberation. Man-

slaughter must be voluntary upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible.

"The killing of a human being in the heat of passion by or with a deadly or dangerous weapon in any case except where the killing is herein declared to be excusable or justifiable, shall be adjudged manslaughter."

It is very earnestly insisted that this instruction was erroneous and prejudicial in that it placed upon appellant the burden of proving his innocence, inasmuch as it was admitted that appellant had killed the deceased. The case of *Cogburn* v. *State,* 76 Ark. 110, is cited in support of this insistence.

Section 2342, C. & M. Digest, reads as follows: "The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless, by the proof on the part of the prosecution, it is sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide."

*Cogburn* v. *State, supra,* is one of the first cases to construe this section of the statute. Mr. Justice RIDDICK, speaking for the court, there said that it was a rule of law to be applied when the killing had been proved and there is nothing shown to justify or excuse said act, as in such case it may well be presumed that there was no justification or the accused would have shown it. But it was there also pointed out that, while the burden of showing circumstances that mitigate or excuse the killing devolves upon defendant, if there is nothing in the evidence on the part of the State which tends to mitigate, justify or excuse it, still the burden on the whole case is on the State, and where evidence is introduced, either on the part of the State or that of the accused, which tends to justify or excuse the killing, the jury must acquit if, upon the whole case, they had a reasonable doubt as to the accused's guilt.

In giving the instruction numbered 2 the court no doubt had in mind the statute quoted above, and, after telling the jury that the burden of proving mitigating circumstances was on the defendant, unless, by the proof on the part of the prosecution, it was manifest that the offense committed amounted only to manslaughter, omitted to add the additional qualification found in the statute, "or that the accused was justified or excused in committing the homicide."

The court should have given the entire section after giving a part of it; but we think no prejudicial error was committed in giving the instruction as set out above, for the following reasons:

(a). The instruction as given did contain the qualification that the burden of proving mitigating circumstances was not on the defendant when the proof on the part of the State showed that the killing amounted only to manslaughter, and this is the offense of which appellant was convicted, and he was given the lowest sentence fixed by law as punishment for that crime—that of two years in the penitentiary—so that the jury must have applied the exception found in the statute and in the charge of the court in fixing appellant's punishment.

(b). Another reason for holding the instruction was not prejudicial is that, in other instructions, the court correctly declared the law upon the subject of the burden of proof. The jury was told that all the instructions should be read together, and in other instructions the jury was fully charged that if, upon a consideration of all the testimony in the case, there was a reasonable doubt of the guilt of the accused, he should be acquitted.

In the case of *Williams* v. *State*, 149 Ark. 601, the court gave § 2342, C. & M. Digest, as an instruction in the case, but, after doing so, the jury was instructed to acquit the accused "if the circumstances of mitigation or justification are such as would raise in your minds a reasonable doubt as to the defendant's guilt." After calling attention to the instruction containing this decla-

ration, it was said that the instructions, when read together, did not conflict, but conformed to the law as announced in the Cogburn case and the later cases there cited.

So here, when all the instructions are read together, we do not think the instruction is open to the objection that it permitted the jury to convict appellant without finding beyond a reasonable doubt that he was guilty of some degree of homicide. Only a general objection was made to the instruction, and we think, in view of all the instructions given in the case, that a specific objection should have been made, if counsel thought at the time that the instruction relieved the State of the burden of showing beyond a reasonable doubt that appellant was guilty of committing an unjustifiable homicide.

Appellant requested a number of instructions on the right of one assaulted with a weapon or instrument capable of inflicting "great bodily harm" to slay his assailant, all of which were refused by the court. We do not set out these instructions because they deal with a subject which has been thoroughly settled by numerous decisions of this court. It suffices to say that the court gave on its own motion instructions correctly declaring the law as to when and the circumstances under which one assaulted may slay his assailant, and no useful purpose would be subserved by reviewing the numerous cases on this subject.

Appellant also requested instructions upon the question of one's right to slay his assailant when a murderous assault was made upon him; but this question appears to have been fully covered by other instructions which were given.

It is insisted that the court erred in giving an instruction on the presumption of innocence which attends one accused of crime, the objection being that "the instruction told the jury that this presumption followed to a certain period of the trial, and from that time on there was no presumption in favor of the accused." The relevant portion of the instruction objected to reads as

follows: "The return of the indictment, gentlemen of the jury, raises no presumption of guilt against the accused. In other words, you are not authorized, when you reach your jury room, that because men composing the grand jury of the Southern District of this county have indicted the accused, that that constitutes guilt or any evidence of guilt. That is not the rule of the law in this State. Every man is presumed to be innocent until the State proves him guilty. This is a humane principle of the law that is intended to shield and protect the innocent from unmerited, unwarranted and unjustifiable punishment at the hands of courts and juries. This presumption of innocence goes with and attends him throughout the entire trial until overcome by evidence establishing his guilt beyond a reasonable doubt, but, where guilt is established, such presumption of innocence by the establishment of guilt beyond a reasonable doubt is eliminated, and, if the evidence does establish guilt, such presumption of innocence cannot be used or urged as a means by which guilty men can escape the just consequences of their own unlawful acts."

We think there was no error in this instruction. If the testimony showed that the accused was in fact guilty, he would not then be protected from punishment by the presumption of innocence, for the reason that the presumption had been overcome. In other words, there would be no presumption of innocence when the testimony showed the guilt of the accused beyond a reasonable doubt. The instruction told the jury that the presumption of innocence "goes with and attends him (appellant) throughout the entire trial, until overcome by evidence establishing his guilt beyond a reasonable doubt", and if this were done there could then be no presumption to the contrary.

It is finally insisted that the court erred in refusing to give instructions defining the offense of involuntary manslaughter, it being insisted that the undisputed testimony shows that appellant, in cutting deceased, was exercising the legal right of defending himself from a

murderous assault, and the jury might have found that, in exercising this legal right, appellant had only acted hastily or without due caution or circumspection, and had therefore committed no greater offense than that of involuntary manslaughter.

We think no error was committed in refusing to submit the question of appellant's guilt of the crime of involuntary manslaughter. As we regard the testimony, it is not an undisputed fact that appellant inflicted the fatal wounds while repelling a murderous assault in his necessary self-defense. As we have said, there were such contradictions in the testimony of the eye-witnesses that it would not have been arbitrary, had the jury disregarded that testimony. In addition to the contradictory statements which these witnesses were shown to have made in regard to the circumstances of the killing, the number and character of the wounds found on the body of the deceased tend strongly to contradict the testimony of these witnesses. There were cuts in the hands of the deceased which indicated that he was trying to seize and hold the knife with which he was being stabbed and with which he was killed.

Moreover, the instructions given directed the jury to acquit appellant if the jury found that a murderous assault had been made on him, and that he struck deceased in his necessary self-defense, under the circumstances as they appeared to him, so that there could have been no error in refusing to submit the question whether he had acted hastily or without due caution or circumspection, as the jury would have acquitted him, had the testimony in his behalf been accepted as true.

Upon the whole case we find no error prejudicial to appellant, and, as we think the testimony is legally sufficient to support the verdict returned, the judgment will be affirmed, and it is so ordered.