GAINES *v.* STATE.

4375                                    186 S. W. 2d 154

Opinion delivered March 12, 1945.

*Claude E. Cooper* and *T. J. Crowder,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

SMITH, J. Appellant was tried under an information charging him with the crime of murder in the first degree, alleged to have been committed by shooting and killing one C. L. Holt. The jury returned a verdict finding appellant guilty of murder in the first degree, and from the judgment pronounced upon the verdict sentencing appellant to death is this appeal.

For the reversal of this judgment numerous errors are assigned, first, that the court erred in refusing to order a change of venue. This assignment of error may be disposed of on two grounds, the first being that the court does not appear to have been called upon to pass upon this petition and did not do so. Secondly, it may be said that the petition was unsupported by the affidavit of anyone except appellant himself, whereas the statute, § 3918, Pope's Digest, requires that the petition, verified by the accused, be supported by the affidavits of two credible persons.

Error is assigned also in the refusal of the court to grant a continuance. Like the petition for the change of

venue, this motion does not appear to have been pressed for action thereon, and the court made no ruling in regard thereto. It appears that there were two motions for continuance, both filed the same day. One alleged the absence and the inability to secure the attendance and testimony of appellant's daughter, Naomi, the other the absence of his wife. But it also appears that the deposition of his wife, who was residing with her daughter, Naomi, in Memphis, was actually taken, and introduced at the trial and there is no showing why the testimony of Naomi was not taken at the same time. Three of appellant's children were present at the trial, two daughters and a son, Robert, and these were all called and used as witnesses for the State. We conclude, therefore, that no error was committed in refusing to grant the continuance, especially so as the court made no ruling on the motion, on the contrary the judgment recites that all parties announced ready for trial.

It is alleged that the court erred in giving instruction No. 13, which reads as follows:

"You are instructed that the killing being admitted, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the defendant, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense only amounted to manslaughter, or that the accused was justified or excused in committing the homicide, but the burden of proof is on the State on the whole case to convince you beyond a reasonable doubt of the guilt of the defendant."

This instruction excluding the addition of the final clause reading, "but the burden of proof is on the State on the whole case to convince you beyond a reasonable doubt of the guilt of the defendant," is identical with § 2968, Pope's Digest, except that the court substituted the word "admitted" for the word "proved" which appears in the first line of § 2968. This substitution of the word "admitted" for the word "proved" did not in any manner affect the meaning of the statute as it appears in the digest, for if the killing was admitted it was proved.

The objection to the instruction is that it shifts from the State the burden of proof and places that burden upon the defendant to prove his innocence. The instruction is not susceptible to that construction, in view of the fact that the clause added by the court, quoted above, expressly tells the jury "that the burden of proof is on the State on the whole case to convince you beyond a reasonable doubt of the guilt of the defendant."

The digester's note to this § 2968 of the statutes, cites a number of cases which have construed and applied it, the two latest of these being *Reynolds* v. *State,* 186 Ark. 223, 53 S. W. 2d 224, and *Francis* v. *State,* 189 Ark. 288, 71 S. W. 2d 469. In the last of these cases it was held that this statute was inapplicable in prosecution for assault with intent to kill, and that it was error to give it in cases of that kind, it being applicable only in homicide cases.

The other case, that of *Reynolds* v. *State, supra,* interprets this statute by quoting from two of the several cases there cited, in one of which it was said:

"The killing being proved, unless the evidence on the part of the State shows circumstances of mitigation, justification, or excuse, it devolves upon the appellant if he relies upon such circumstances to show them, but the burden is still on the State to show that the defendant is guilty of every grade or degree of crime included in the indictment. The burden, in other words, in a charge for murder, never shifts to the defendant, but always remains on the State. *Cogburn* v. *State,* 76 Ark. 110, 88 S. W. 822.

"Other cases to the same effect are as follows: *Scoggin* v. *State,* 109 Ark. 510, 159 S. W. 211; *Johnson* v. *State,* 120 Ark. 193, 179 S. W. 361; *Parsley* v. *State,* 148 Ark. 518, 230 S. W. 587; *Williams* v. *State,* 149 Ark. 601, 233 S. W. 776; *Black* v. *State,* 171 Ark. 307, 284 S. W. 751; *Walker* v. *State,* 100 Ark. 180, 139 S. W. 1139; *Maddox* v. *State,* 155 Ark. 19, 243 S. W. 853."

The instruction harmonizes with this construction of the statute, and no error was committed in giving it. Other later cases to the same effect are *Dixon* v. *State,*

191 Ark. 526, 87 S. W. 2d 17; *Trammell* v. *State,* 193 Ark. 21, 97 S. W. 2d 902; *Hogue* v. *State,* 194 Ark. 1089, 110 S. W. 2d 11; *Gentry* v. *State,* 201 Ark. 729, 147 S. W. 2d 1.

The record reflects that on cross-examination as a witness, appellant was interrogated as follows: "Q. I will ask you even before you were married if you and your wife didn't go to a picnic in Mississippi and you shot your brother-in-law and a neighbor and nearly killed him?" Mr. Norfleet (counsel for appellant): "I object to that. I don't know whether he did that or not." No other objection was made, and the objection was not interposed that this was not a recent occurrence. Upon the objection being overruled appellant admitted he had shot those two people. It will be observed that this question was asked appellant upon his cross-examination as a witness, and the rule has long been well established that a defendant who takes the stand as a witness in his own behalf may be subjected to the same cross-examination as any other witness.

It was held in an opinion by Justice HART in the case of *McGraw* v. *State,* 184 Ark. 342, 42 S. W. 2d 373, that one on trial for killing his wife might be asked if he had not also killed her stepfather some years prior, although there was no connection between the homicides, and many cases hold that for the purpose of testing the credibility of the witness, he may be asked if he did not commit certain specific crimes. He may not, however, be asked if he had been accused or indicted for their commission.

The distinction is pointed out in the case of *Croft* v. *State,* 202 Ark. 719, 152 S. W. 2d 563, where a defendant on trial for larceny was asked on his cross-examination if he had not, on another occasion, robbed another man. In holding this testimony competent, we said that the accused on trial had not been interrogated concerning the accusation of another crime, or an indictment charging one. If the defendant when asked if he had on another occasion killed another man, answers in the affirmative, he has the right to make an explanation showing that the killing was not a criminal act, and his answer, whether true or false, concludes the inquiry. It was so expressly

held in the Croft case, *supra,* where it was said: "In permitting this cross-examination the court admonished the jury that it could be considered only as affecting the credibility of the witness. As thus limited, many cases have held that the cross-examination was proper. A recent case, citing others to the same effect, is that of *Phillips* v. *State,* 190 Ark. 1004, 82 S. W. 2d 836."

It is urged that certain other incompetent testimony was offered, but it was admitted that this was done without objection on appellant's part, and we may not, therefore, consider it. Unless objection is made no ruling on the part of the court is required and in the absence of a ruling no question is presented for our review. In the Phillips case, *supra,* we quoted from the case of *Howell* v. *State,* 180 Ark. 241, 22 S. W. 2d 47, the following statement: "It therefore appears to be the settled rule of this court that, although in capital cases exceptions would not have to be saved, objection must be made at the time before this court will be authorized to review it, and, as to the admissibility of the testimony complained of, no objection was made at the time. (Citing cases.)"

During the progress of the trial, but before its conclusion, counsel for appellant suggested to the court that the testimony indicated that appellant was insane, and the court was asked to withdraw the submission of the case from the jury and commit appellant to the State Hospital for Nervous Diseases for examination and report, pursuant to the provisions of Initiated Act No. 3, adopted by the people at the general election in November, 1936, appearing as §§ 3913 *et seq.,* Pope's Digest.

It was held in the case of *Whittington* v. *State,* 197 Ark. 571, 124 S. W. 2d 8, that while the provisions of this act are mandatory, the defendant must bring himself within the requirements of the statute before he can invoke its provisions. Here there was no suggestion of appellant's insanity until after the trial had commenced and was approaching its conclusion, and it was therefore then a matter within the discretion of the court to suspend or to proceed with the trial. We said in the Whittington case, *supra,* that: "The purpose of the statute was to

furnish a means for the examination of one who gives notice to the court that he pleads or intends to plead insanity as a defense to the crime charged, or where the court has reasonable information from some reliable source that he was insane at the time he committed the crime or had become insane since that time.''

The cases of *Carson* v. *State,* 198 Ark. 112, 128 S. W. 2d 373, and *Gunter* v. *State,* 202 Ark. 551, 151 S. W. 2d 85, are to the same effect. Here the plea was self-defense and the case was tried on that theory. No suggestion was made to the court that defendant was insane until testimony was offered showing a most malignant disposition and violent temper on the part of the accused, both at the time of the killing and during the trial, and it was therefore within the sound discretion of the court to order the trial to proceed, without committing appellant for examination and a report as provided by Act 3, *supra.*

The court did, however, submit to the jury the question of appellant's sanity, under instructions to which no objection is offered. We conclude, therefore, that there was no error in refusing to suspend the trial, as the defense of insanity was not seasonably interposed.

The chief insistence for the reversal of the judgment is that it is not sufficiently supported by the testimony, and this is the important and serious question in the case, but in its decision we must, in accordance with the rule consistently followed by this court, give the testimony tending to support the verdict its highest probative value.

Thus viewed, the testimony is to the following effect: Appellant was shown to be a man of violent and ungovernable temper. Indeed it was this testimony which formed the basis of the plea of insanity. Appellant and his wife, who was the mother of twelve children, had quarreled, and appellant appears to have done most of the quarreling, and a divorce and division of their property was contemplated. Appellant's wife visited Robert, one of their sons, in Tennessee, and remained there longer than appellant thought she should have done. On her return she spent a night at a tourist camp and appellant

accused her of an illicit relation with a man at this camp, although he denied having made that charge. Mrs. Gaines told Robert, her son, residing in Tennessee, that his father had been mistreating her and had whipped and beaten her, and Robert came to their home near Wynne, arriving there about 9:30 p. m. He refused to shake hands with his father, and told him that he did not intend to allow him to whip his mother again. Robert returned to Wynne to procure a peace warrant and it was the attempt to serve this warrant which led to the killing of Holt, the officer who had the warrant for service. When Robert left his father's home, he announced that he was returning to Tennessee, and he left for his own home that night, without returning to his father's home. The disturbance continued after Robert's departure, and appellant's children, fearing further trouble, hid their father's weapons, of which he had several. Appellant told his wife that when he got through with her she would not write her son any more letters, and started searching for his gun. Mrs. Gaines told the children, ''Run for your lives,'' and they all fled from the house and took refuge in the home of a neighbor living across the road.

Appellant partly undressed, but he did not retire, and the light of the cigarettes he smoked could be seen by the members of the family who were at the neighbor's house across the road.

Robert went to Wynne and procured a peace warrant, which was placed in Holt's hands for service. Accompanied by two other officers Holt drove in his car to appellant's home. The car stopped in front of and about 15 feet from the door of Gaines' home, with the headlights of the car shining directly on the door. The two officers testified that when they reached appellant's home it was apparently deserted, that the horn of the car was blown twice, and no response was received, that Holt got out of the car and called to appellant as he advanced towards the door. Holt was armed, but he did not have his pistol in his hands. Without a word being said Holt was shot when he approached the house, when appellant began firing through a screen door. The killing

was in August and the weather was warm. The first shot struck Holt and as he doubled up he remarked to the officer accompanying him, "Charlie, he shot me," and another shot was fired which also took effect. The two officers testified that appellant could have heard the remark made by Holt. One of the officers got out of the car while the other remained in it. Appellant said he took a "poke" at the other officer who got out of the car, and he too was shot, but not seriously wounded. The officer who remained in the car fired at appellant through the windshield of the car, but that shot did not take effect. The officers then left and returned to Wynne.

Appellant found one of his guns, which he owned, after his family had fled across the road, a pump shotgun, and proceeded to fill the magazine with shells loaded with No. 6 shot. Appellant testified that his son, when he left, stated that he would return and kill his father, but there was no corroboration of this testimony. Appellant further testified that he expected his son to execute this threat and for that reason he remained on guard to protect himself from the anticipated assault and that he thought he had killed his son, and that he did so in self-defense, as he supposed. Appellant admitted that he knew there was more than one person in the car when it stopped in front of his house, and that he thought the first person to get out of it was his son, and that he fired through the screen door without calling to his son to halt. One of appellant's daughters testified that she saw Holt leave the car, and that she knew from his size and the color of his clothes, that the man was not her brother. She called out, "Don't go in there, he will kill you," but no one appears to have heard the warning.

It may never be known just what appellant had in his mind, but the jury was fully warranted in finding that he had murder in his heart, and that he sat near his door with his gun in his hand for more than an hour. The jury might well have believed that had appellant's wife been the first person to enter the house she would have been the victim of his wrath, for he had said to her when he began his search for his gun, that when he got through

with her she would never write their son any more letters about his treatment of her.

The officers who were not killed, who accompanied Holt to appellant's home, returned to Wynne and notified the sheriff of the county, who returned with them to the scene of the killing. Appellant told them he had killed his son, and had done so in self-defense. When the sheriff reached appellant's home, he called appellant and told him who he was, and appellant surrendered without resistance.

John Couch went to the scene of the killing the night it occurred, and he testified that appellant told him Holt had been there and whipped him while he was in bed, and that Holt said he was coming back and that when Holt came back, that was the time he killed him. That statement is false, and no one contends that it is true.

Appellant testified that he did not intend to kill Holt and that he supposed the man at whom he shot was his son, but this would have been no defense, unless he would in fact have been justified in killing his son. This question was presented in the recent case of *Clingham* v. *State,* 207 Ark. 686, 182 S. W. 2d 472, where Clingham shot an officer attempting to arrest him and testified that he did not know who the officer was, but supposed he was Webber, a man with whom he had just quarreled. We there said: "The fact that appellant may have believed that he was firing at Webber, or may not have known that he was firing at an officer, does not excuse or mitigate his offense. Where one, in an attempt to murder, slays by mistake a person other than the intended victim, he is nevertheless guilty of murder. *Ringer* v. *State,* 74 Ark. 262, 85 S. W. 410; *Brooks* v. *State,* 141 Ark. 57, 216 S. W. 705; *Daniels* v. *State,* 182 Ark. 564, 32 S. W. 2d 169; 26 Am. Jur. 179."

As appellant would not have been justified in killing his son, he cannot excuse himself by saying that he thought he was shooting his son, and not another person. He would be guilty of the same offense, if any, of which he would have been guilty if he had in fact killed his son.

The jury heard and has passed upon the testimony, and evidently did not believe that appellant fired the fatal shot in his necessary self-defense, and we think the testimony is legally sufficient to support that finding, and as no error appears, the judgment must be affirmed and it is so ordered.

ROBINS, J., dissenting. In my opinion prejudicial error was committed by the lower court when the prosecuting attorney was permitted to bring out from appellant on cross-examination that about thirty years ago appellant shot another man. It seems to me that the effect of the majority opinion is to overrule our decision in the case of *Stanley* v. *State,* 171 Ark. 536, 285 S. W. 17, in which we reversed a conviction of homicide because the defendant was compelled to make answer as follows: ''Q. Tell the jury how many men you shot before that. A. I have shot two men before this.'' The rule followed by us in the Stanley case is supported by the great weight of authority, and is but a corollary to the rule that a man on trial for one offense should not be convicted by showing that he committed another offense.

I think the judgment of the lower court should be reversed and the cause remanded for a new trial.