DANIELS v. STATE.

Opinion, delivered November 3, 1930.

Luke F. Monroe, for appellant.

Hal L. Norwood, Attorney General, and Robert F. Smith, Assistant, for appellee.

HART, C. J. John Daniels has prosecuted this appeal to reverse a judgment of conviction against him for the crime of murder in the second degree. The jury trying him has fixed his punishment at twenty-one years in the State penitentiary.

It is first insisted that the judgment should be reversed because the court erred in refusing to grant the defendant's motion for a change of venue. Under our statute, the allegations for a change of venue in a criminal case must be supported by the affidavits of two credible persons, who are qualified electors, actual residents of the county, and not related to the defendant in any way. The statute, however, does not provide how it shall be shown that the affiants are credible persons. This is left to the court to determine. The court may permit the witnesses themselves to be examined or it may hear the testimony of other witnesses bearing on the credibility of the affiants, but it cannot go into the question of whether the facts sworn were true or false. White v. State, 83 Ark. 36, 102 S. W. 715; Strong v. State, 85 Ark. 536, 109 S. W. 536, 14 Ann. Cas. 229; Latourette v. State, 91 Ark. 65, 120 S. W. 411; Whitehead v. State, 121 Ark. 390, 181 S. W. 154; Hale v. State, 146 Ark. 579, 226 S. W. 527; Adams v. State, 179 Ark. 1047, 20 S. W. (2d) 130.

Tested by this well-settled rule, it cannot be said that the court abused its discretion in not granting a change of venue. We do not deem it necessary to set out in detail the examination of the witnesses as to the credibility of the supporting affiants. We deem it sufficient to say that we have carefully examined it and are of the opin-

ion that the court was justified in finding that they did not have knowledge of the conditions of the minds of the inhabitants throughout the entire county, and were not therefore credible persons within the meaning of the statute.

Besides this, the supporting affiants did not comply with the statute by stating that they were qualified electors and not related to the defendant in any way. *Padgett* v. *State*, 171 Ark. 556, 286 S. W. 819; and *Adams* v. *State*, 179 Ark. 1079, 20 S. W. (2d) 119.

According to the evidence for the State, the defendant shot and killed Mildred Jobe, a young girl, at the home of her parents in Nevada County, Arkansas, on the 8th day of July, 1930. John Jobe, her father, was a special deputy sheriff, and a few days before had arrested a son of John Daniels, and had taken a gun away from him. On the day of the killing, John Daniels approached the house of John Jobe with a single barrel shotgun in his hand. He asked Mrs. Jobe where her husband was. She informed him that he was plowing back of the house. The defendant went on back of the house, and Mrs. Jobe followed him by going through the house. The defendant asked Mrs. Jobe if her husband had arrested his boy. She replied, ''Yes, sir.'' The defendant then asked her if John Jobe had the gun. She replied, ''No, sir, the sheriff has it.'' The defendant then said, ''They can have my boy, but that is my gun, and John must get it.'' When the defendant met John Jobe, he said, ''I have got to have my gun. Where is it?'' Jobe replied that the sheriff had it. The defendant then commenced cursing, and said that he would job his gun clear through him if he didn't get it. The defendant put his gun right in Jobe's stomach, and John Jobe grabbed the gun with both hands. Mildred Jobe came up and grabbed the gun barrel, and the defendant gave her a push with the gun and shot her in the side. She lived about thirty minutes.

The above is the testimony of Mrs. John Jobe, and it was corroborated by Velma Jobe, a sister of the de-

ceased. Both Mrs. Jobe and her daughter testified in addition that John Jobe struck the defendant with his fist before the gun fired. Velma Jobe said that the defendant was doing his best to get the gun on her father to shoot him when her sister grabbed hold of the gun with both hands. The defendant then shoved her so hard that she turned loose of the gun and he then shot her. The defendant pulled the trigger at the time the gun fired.

According to the testimony of the sheriff of Nevada County, the gun was a hammer gun, that is, it was a gun that you had to pull the hammer back and then pull the trigger to fire it. When he pulled the hammer back, it would rest until the trigger was pulled.

According to the evidence of the defendant, he did not intend to kill either John Jobe or his daughter. He was not mad at John Jobe and only came there to get his gun. He said the killing was wholly accidental.

Under our rules of practice, the jury is the judge of the credibility of the witnesses and the weight to be given to their testimony. The jury was justified in finding that the defendant was trying to shoot John Jobe, and that the gun was fired and killed John Jobe's daughter while the defendant was endeavoring to shoot the father. They might have found that the gun was not discharged accidentally after John Jobe struck the defendant with his fist. According to the testimony of the sheriff, the gun was a hammer gun, and it was necessary to pull the hammer back before the trigger could be pulled to fire the gun. The witnesses for the State testified that the defendant was trying to shoot John Jobe when the latter's daughter came up and grabbed the gun in an effort to save her father. The jury might have found that the defendant had pulled the hammer back and was ready to fire the gun before John Jobe struck him.

If he had killed John Jobe, the jury would have been justified in finding him guilty of murder in the second degree. The leading characteristic of murder in the second degree is the presence of malice, distinguishing it

from manslaughter, and the absence of premeditation and deliberation. The attendant circumstances warranted the jury in finding that the defendant was actuated by malice in trying to shoot John Jobe. When the accused shoots at one man and kills another, malice will be implied as to the latter, and the felonious intent will be transferred. *Brooks* v. *State,* 141 Ark. 57, 216 S. W. 705.

It is insisted that the judgment should be reversed because the court erred in its instructions to the jury on murder in the first degree. The jury found the defendant guilty of murder in the second degree, and thus removed all prejudice which might have resulted from erroneous instructions on murder in the first degree. *Witham* v. *State,* 149 Ark. 424, 232 S. W. 437; *Williams* v. *State,* 162 Ark. 285, 258 S. W. 386; and *Sullivan* v. *State,* 163 Ark. 353, 258 S. W. 980.

It is next insisted that the court erred in giving an instruction to the jury to the effect that if the defendant was attempting to shoot John Jobe with the gun at the time it fired and killed his daughter, then the defendant would stand in the same postition as if he had actually killed John Jobe. There was no error in giving this instruction. It is quite lengthy, and we need not set it out. We deem it sufficient to say that in form it complied with the principles of law decided in *Brooks* v. *State, supra.*

Counsel for the defendant insists that there was no testimony upon which to base it, and for that reason it was erroneous. We cannot agree with counsel in this contention. As we have already seen, the gun with which the deceased was killed was a hammer gun, and it was necessary to pull the hammer back before it could be fired by pulling the trigger. The jury might have found that the defendant had pulled the hammer back in an effort to shoot John Jobe, and that he pulled the trigger in an effort to do so and that the daughter of John Jobe was killed when the gun was fired. Although she had turned the gun loose when the defendant pulled the trigger, the jury was warranted in finding that he had already

cocked the gun and was trying to kill John Jobe before the latter struck him and before the gun was actually fired. This warranted the jury in finding a verdict against the defendant of murder in the second degree because it might have found from the attendant circumstances that the defendant was actuated by malice at the time he was endeavoring to shoot John Jobe, and shot the latter's daughter.

We find no prejudicial error in the record, and therefore the judgment will be affirmed.