Trotter *v.* State.

4341                                                        177 S. W. 2d 173

Opinion delivered January 31, 1944.

*John P. Vesey*, for appellant.

*Guy E. Williams*, Attorney General, and *Oscar E. Ellis*, Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. Queen Trotter, unmarried colored female, was found guilty of forcibly taking $55 from George Williams. Appellant admits the transaction, but says the money was hers, and that on a charge of robbery she is protected by the law as declared in *Davidson* v. *State*, 200 Ark. 495, 139 S. W. 2d 409.

"Cooncan," a game involving deft elements of skill, and not free from the casualties of chance, had periodically engaged the attention of George and Lee Williams. Lee lived with Queen without benefit of clergy or civil condonation. Indeed, the realm of speculation and conjecture is not invaded if it be suggested that Queen's modest cottage became sanctuary when the yen to play became more than an incidental matter with George and Lee.

On the occasion fraught with discord George had won $5 from Lee. The latter, addressing himself to Queen, said, "Baby, bring me some more money." Instead of accommodating, Queen, according to George, "shuffled around [in an adjoining room] and came out with an automatic, saying, 'Gimme fifty'."

692

Two weeks prior to this experience George had won $50 in a similar game with Lee. It was contended in defense that Lee purloined Queen's money and lost it to George, and that recovery of fifty-five dollars was merely an act of repossession. But George testified that Lee had $25 of his own when he won the fifty. If this be true, (and the jury must have believed it) Queen, in "automatically" settling with George, went a little the rise of repossession. We think there was a jury question respecting capital ownership.

Queen denied having used a pistol. A piece of wood, she says, was mistaken for the more influential weapon. However, officers who made the arrest testified that she first told them she concealed the forty-five, then denied its existence. George was certain. Here, again, was a question for the jury.

But, argues appellant, even if it be conceded a pistol was used, the crime was not robbery, and *Davidson* v. *State* applies. That case is not a judicial blueprint authorizing complete freedom of action for Pistol Packing Mammas. As we have said, George testified that Lee had $25 of his own money when the twain played a fortnight before Queen's armed displeasure was expressed. There is also testimony that Queen loaned some of the money to Lee. In that event title passed to Lee and Queen did not have the right to recapture from George what Lee had lost at cards, although the rule would be different had Lee been the motivating force.

It is contended that venue was not proved. There was testimony that police officials of the City of Hope were notified and arrived at Queen's home within a few minutes. There are other circumstances from which a clear inference arises that the hold-up occurred in the City of Hope. Appellant thinks the rule in *Tyra* v. *State*, 192 Ark. 192, 90 S. W. 2d 505, should be overruled. This decision was handed down in February, 1936. Initiated Act No. 3 was adopted in November of the same year. Section 26 creates a legal presumption that an offense was within the jurisdiction of the Court unless the con-

trary is shown. *Meader* v. *State,* 201 Ark. 1083, 148 S. W. 2d 653; *Ward* v. *State,* 203 Ark. 1024, 160 S. W. 2d 864.

Assigned as error is the Court's refusal to give Instructions 1, 2, 3, and 4, requested by the defendant. The first three were incomplete in that they would have told the jury that if the defendant took from George Williams only the money George had won at gambling at any time within ninety days, there should be an acquittal. George might have gambled with others and won. In that event Queen would not have had the right to act. Of course what is meant is quite clear. Nevertheless, the instructions were technically incorrect and the Court was not required to give them.

Instruction No. Four was to the same effect, but is not open to the vice affecting the other three. The exact point, however, was covered by the Court's oral instruction, in which the jury was told that the defendant would not be guilty of robbery if she repossessed her own money in the manner complained of.

Affirmed.