HENLEY *v.* STATE.

4426                                197 S. W. 2d 468

Opinion delivered November 25, 1946.

*O. H. Hargraves* and *Ward & Ward*, for appellant.

*Guy E. Williams*, Attorney General, and *Arnold Adams*, Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. Jeff Henley, Jr., prosecutes this appeal to reverse a judgment of conviction against him in the circuit court of Lee county, Arkansas, for murder in the first degree for killing his 19-year-old wife, Mabel Henley, on February 23, 1946. A jury fixed his punishment at death.

The defendant and Mabel Williams were married in 1940 and separated two or three times prior to December,

1945, when Mabel, with their three children, left defendant and went to the home of her parents, John Williams and wife. After the last separation, defendant made several visits to the home of his father-in-law in unsuccessful attempts to effect a reconciliation and persuade his wife to live with him.

On Saturday night, February 23, 1946, defendant was in Marianna, Arkansas, where he saw his wife's mother and decided to visit his wife in the John Williams home which was located about 8 miles southwest of Marianna on the highway between that city and the village of Aubrey. He engaged a friend, James Otis, to drive him to the Williams home about 10:30 p. m. When they arrived at the Williams home, Mabel was called to the door by James Otis and, after some discussion between defendant and his wife, she promised to go home with him. On the pretense of getting her coat, she closed and fastened the door from the inside, ran into an adjoining room, and told her 11-year-old brother, Donzell Williams, to get the gun, that defendant was there. Defendant forced the door open and Donzell attempted to shoot defendant with a 12-gauge pump shotgun belonging to John Williams, but the gun "snapped" and did not fire when Donzell·pulled the trigger. Donzell Williams testified that there were shells in the magazine, but none in the barrel of the gun, when he attempted to shoot defendant. Defendant took the gun from Donzell and started in quest of Mabel who had fled to the home of a neighbor, Jessie Day, who lived about 200 yards from the Williams home. James Otis left the scene in the meantime and drove his car back to Marianna.

John Williams and his wife returned to their home from Marianna with John Ratcliff and his wife in a truck which Ratcliff was driving. They arrived about midnight and entered the Williams home. After learning what had happened, John Williams sent Ratcliff to the home of Jessie Day in search of Mabel. Defendant had remained in the neighborhood with the shotgun and recognizing Ratcliff, whom he suspected of having an affair with Mabel, followed the truck. Ratcliff parked his truck

in front of the house and informed Jessie Day of his mission. Mabel and Ratcliff started toward the truck. As they approached a wagon bridge which traverses a ditch adjacent to the highway, the defendant stepped from behind the truck and commanded them to halt. Defendant then ordered Mabel to come to him. Mabel commenced crying and proceeded toward defendant to a point about halfway between Ratcliff and defendant when she stopped and said: "This is far enough." Defendant cursed and made a motion as if to strike his wife with the shotgun. Mabel turned and started to run when defendant shot her in the back about the lumbar region at the hips.

After Mabel fell to the ground, she called for her father, and defendant ran to her and admonished her to cease "hollering." Defendant then left the scene and reported the incident to his employer who called the sheriff. Mabel was taken to the home of Jessie Day and a physician was called who testified that the wound severed all blood vessels in Mabel's back and that the size and nature of the wound made it apparent that the shot was fired at short range. Mabel died within a few hours.

At the conclusion of all the testimony, defendant moved to dismiss the charge on the ground that the venue had not been proven. Defendant's first contention for reversal is that the trial court erred in overruling this motion. This contention cannot be sustained. Section 26 of Initiated Act No. 3 of 1936, Acts of Arkansas, 1937, p. 1384, provides: "It shall be presumed upon trial that the offense charged in the indictment was committed within the jurisdiction of the court, and the court may pronounce the proper judgment accordingly, unless the evidence affirmatively shows otherwise."

In the case of *Trotter* v. *State*, 206 Ark. 690, 177 S. W. 2d 173, it was held that § 26, *supra*, creates a legal presumption that a crime charged by information or indictment was committed within the jurisdiction of the court where the accused was tried unless the contrary is shown by the evidence. See, also, *Meador* v. *State*, 201

Ark. 1083, 148 S. W. 2d 653; *Ward* v. *State,* 203 Ark. 1024, 160 S. W. 2d 864. The evidence in the case at bar does not affirmatively show that the crime was committed ''otherwise'' than in the jurisdiction of the court where defendant was tried. On the contrary, we think the evidence does show affirmatively that the offense charged in the information was committed in Lee county. Several witnesses testified that the home of Jessie Day, where the killing occurred, was located on the state highway between Marianna and the village of Aubrey. We judicially know that the village of Aubrey is in Lee county and an inspection of the maps of the county discloses that any point on the public highway between Marianna and Aubrey is well within the territorial limits of Lee county. *Atwood* v. *State,* 184 Ark. 469, 43 S. W. 2d 70; *Harris* v. *State,* 186 Ark. 10, 52 S. W. 2d 631; *Bender* v. *State,* 202 Ark. 606, 151 S. W. 2d 668. There is, therefore, sufficient proof of venue, which may be shown by a mere preponderance of the evidence, without indulging in the presumption created by § 26 of Initiated Act No. 3, *supra.*

The defendant's second contention for reversal of the judgment is that the evidence is insufficient to support a verdict inflicting the death penalty. There is little, if any, material conflict in the testimony as to events transpiring up to the time the fatal shooting occurred. Defendant testified in his own behalf that he suspected Ratcliff of having an affair with defendant's wife; that when he stopped Mabel and Ratcliff and, told his wife to come to him, Ratcliff also advanced toward him, walking behind Mabel, with his hands in his pockets; that Ratcliff told Mabel she did not have to go with defendant and Mabel turned and ran; and that he intended to shoot Ratcliff, but Mabel was in the line of fire between them. Ratcliff denied having any conversation with Mabel as they walked toward the truck and denied that he advanced toward defendant, after he was told to stop.

If the defendant had no intention of killing his wife but intended, as he testified, to shoot Ratcliff, this would

have been no defense unless he would in fact have been justified under the circumstances in killing Ratcliff. A similar question was presented in the case of *Clingham* v. *State,* 207 Ark. 686, 182 S. W. 2d 472, where this court said: "The fact that appellant may have believed that he was firing at Webber, or may not have known that he was firing at an officer, does not excuse or mitigate his offense. Where one, in an attempt to murder, slays by mistake a person other than the intended victim, he is nevertheless guilty of murder. *Ringer* v. *State,* 74 Ark. 262, 85 S. W. 410; *Brooks* v. *State,* 141 Ark. 57, 216 S. W. 705; *Daniels* v. *State,* 182 Ark. 564, 32 S. W. 2d 169; 26 Am. Jur. 179." See, also, Annotation, 18 A. L. R. 917; 40 C. J. S., Homicide, § 18, pp. 864-5; *Gaines* v. *State,* 208 Ark. 293, 186 S. W. 2d 154.

The evidence adduced on behalf of the State was substantial and sufficient to warrant a finding by the jury that defendant shot and killed his wife, and did so without sufficient provocation, with malice aforethought and after deliberation. This evidence was sufficient to sustain the verdict for murder in the first degree.

We have carefully examined the instructions given by the trial court. The matters embraced therein have been approved by this court in many similar cases. No objections were made to the instructions, and the only objections interposed by defendant to the admissibility of testimony were sustained by the trial court.

The right of the jury to fix the punishment at life imprisonment under § 4042 of Pope's Digest, in the event defendant should be found guilty of murder in the first degree, was clearly defined by the trial court. The jury's determination that the higher degree of punishment should be imposed to meet the ends of public justice will not be disturbed.

We find no error, and the judgment is affirmed.