LILLARD *v.* STATE.

5065 365 S. W. 2d 144

Opinion delivered February 11, 1963.

[Rehearing denied March 18, 1963.]

*Harry C. Robinson*, for appellant.

*Jack Holt, Jr.*, Atty. General, by, *Dennis W. Horton* and *Jack L. Lessenberry*, Assistant Attorneys General, for appellee.

ED F. McFADDIN, Associate Justice. Appellant Dave Lillard was duly charged with the crime of murder in the first degree (§ 41-2205 Ark. Stats.) for the homicide of Mack King. Appellant's trial[1] resulted in a conviction of murder in the second degree (§ 41-2206 Ark. Stats.), and a sentence of seven years; and from that judgment this appeal is prosecuted. The motion for new trial contains six assignments.

I. *Sufficiency Of The Evidence.* Assignments 1 to 4, inclusive, concern this topic. At about 9:30 P.M. on June 14, 1960, Mack King and his brother, Pete Mack, along with two other persons (William Hill and Leon Majors), were in front of the Twin City Social Club, located on State Street in Little Rock. Some of the four named persons were seated, and some were standing. Appellant Dave Lillard drove by in his car and Pete Mack said, "Hey, David, you looking for me?"; to which appellant

---

[1] The homicide occurred on June 14, 1960; appellant was allowed to, and did, make bail; he obtained repeated continuances; and the trial from which comes this appeal was held on June 21, 1962.

replied, "No, I thought maybe you-all was looking for me — you been messing in my business." With nothing further said, the appellant seized his 12-gauge shotgun, emerged from his car, and fired several shots, which resulted in the death of Mack King. No other person fired any shots. The Coroner testified that Mack King died that night as a result of multiple shotgun wounds which fractured the third and fifth ribs, punctured the left lung, and injured the spinal column, the face, and body. The homicide by appellant was established. Appellant, testifying in his own behalf, stated: that he emerged from his car and started shooting; that Pete Mack had threatened him; that Pete Mack put his hand in his pocket as though he were "reaching for a gun"; and that appellant was shooting at Pete Mack and not at Mack King, whom he shot.

We have detailed a sufficient amount of the testimony to establish that appellant's assignments are without merit. Second degree murder — of which the defendant was convicted — requires the proof of (1) unlawful killing, and (2) malice. *Wooten* v. *State*, 220 Ark. 750, 249 S. W. 2d 964. The killing was admitted, and no witness substantiated the appellant as to Pete Mack making any movement that might have indicated that he was "reaching in his pocket for a gun." Malice and intent to kill may be implied from the use of a weapon, such as the shotgun used by appellant in this case. *Wallin* v. *State*, 210 Ark. 616, 197 S. W. 2d 26. The fact that appellant intended to shoot Pete Mack and by mistake shot Mack King is no defense. In *Clingham* v. *State*, 207 Ark. 686, 182 S. W. 2d 472, we said:

"Where one, in an attempt to murder, slays by mistake a person other than the intended victim, he is nevertheless guilty of murder. *Ringer* v. *State*, 74 Ark. 262, 85 S. W. 410; *Brooks* v. *State*, 141 Ark. 57, 216 S. W. 705; *Daniels* v. *State*, 182 Ark. 564, 32 S. W. 2d 169; 26 Am. Jur. 179."

To the same effect see *Gaines* v. *State*, 208 Ark. 293, 186 S. W. 2d 154; *Henley* v. *State*, 210 Ark. 759, 197 S. W. 2d 468; and *Johnson* v. *State*, 214 Ark. 902, 218 S. W. 2d 687.

The evidence was amply sufficient to take the case to the jury and to support the verdict and judgment rendered.

II. *Admission Of Photographs.* The fifth assignment in the motion for new trial reads:

"The Court erred in allowing the State to offer a series of seven pictures, marked Exhibits 'a', 'b', 'c', 'd', 'e', 'f', and 'h', over the objections and exceptions of the defendant."

Exhibits "a", "b", "c", and "d" were pictures of the deceased, taken shortly after the killing, and these pictures showed that he was shot in the back, in the face, in the head, and in the neck. Exhibit "f" was a picture of the door to the Twin City Social Club, showing that at least twelve shots hit the door; and Exhibit "h" showed that at least ten shots hit the door facing. These pictures were admitted over appellant's objections. Exhibit "e" was a picture originally ruled out by the Court, but then later introduced without objection, and it showed the street in front of the social club. There was no error in the ruling of the Court admitting any of these pictures. It was testified that every picture was taken at the direction of and in the presence of the officers, that the pictures were accurate, and that each fairly and truthfully represented the subject matter. See *Higdon* v. *State,* 213 Ark. 881, 213 S. W. 2d 621; and *Oliver* v. *State,* 225 Ark. 809, 286 S. W. 2d 17.

III. *The Jury Panel.* The sixth assignment in the motion for new trial reads:

"The Court erred in refusing to grant the defendant's motion to quash the jury panel because the jury had been improperly selected as set out in his motion, over the objections and exceptions of the defendant."

Only two witnesses were offered to sustain the motion[2] to quash. The first witness was Mr. Gip Robertson (Chief

[2] The motion to quash the jury panel was filed on June 21, 1962, and read:
"That the entire jury panel should be quashed, because the defendant is a negro, and the Commissioners of this Court could not, and did not select a fair and impartial jury to try the defendant, or any other member of the negro, or colored, race, by designation with a

Deputy Tax Collector of Pulaski County), who introduced the current printed poll tax book of Pulaski County, and testified that in preparing the book when the copy of the poll tax receipt showed the letter ''C'' opposite the name of the person paying the poll tax, then the printed list likewise showed the letter ''C'', which meant that the person paying was a Negro; but that if a person wrote in for a poll tax receipt and did not designate color, then there was no ''c'' shown by such name. That was the extent of the testimony of this witness, except the following:

''Q.  Mr. Robertson, do you have anything to do with the selection of the commissioners or jurors?

**''A.  No.**

''Q.  Do you know whether or not the jury commissioners use the designations after the names to select the jury list?

''A.  I do not.

''MR. ADKISSON: That is all.

''THE COURT: As a matter of fact, you don't know whether or not they use this list at all, do you?

''A.  No, I don't know.''

The only other witness called on the motion to quash was P. B. Frederick (Deputy Circuit Clerk); and he testified that five Negroes were then serving on the regular and alternate jury panel in the First Division Circuit Court in which this case was being tried. We have given the sum total of all the evidence adduced by the appellant on his motion. The Trial Court refused to quash the jury panel; and we find the evidence offered by the appellant to be entirely insufficient to reverse the ruling of the Court. No Jury Commissioner was called to state how the panel was selected; and it was not even shown

---

capital letter (c) opposite the name of each negro or colored person, which is a violation of the defendant's constitutional rights as provided by the Constitution of the State of Arkansas, and the constitution of the United States.

"That there is not a fair representation of negroes or colored people on the Jury Panel because the Jury Commissioners are able to exclude them because of the way the qualified electors are designated."

that no Negroes were on the jury that was selected to try this case.

The appellant cites two cases in his behalf. One is *Avery* v. *Georgia,* 345 U. S. 559, 73 L. Ed. 1244, 73 S. Ct. 891; and the other is *Bailey* v. *Henslee,* 287 F. 2d 936. Each of these cases presented a factual situation vastly different from that in the case at bar. In the Avery case, it was shown that no Negro was selected to serve on a panel of sixty jurors. In the case at bar, it was shown that five Negroes were on the panel at the term of Court in which the appellant was tried. There was no testimony that any discrimination was used by the Jury Commissioners in selecting the personnel for the panel.

The opinion of the Eighth Circuit Court in *Bailey* v. *Henslee (supra)* is scholarly and thorough. In that case, decided in March 1961, Judge Blackmun reviewed all of the leading cases on the matter of discrimination in selection of a jury, and listed nine factual matters present in that case, which "taken in the aggregate lead us to the conclusion that a *prima facie* case of limitation of members of the Negro race in the selection of this defendant's petit jury panel was established . . . " The seventh of these factual matters mentioned by Judge Blackmun was the use of the letter "c" after the name of a Negro poll taxpayer. The absence in the present case of any evidence of the other eight factual matters regarded as essential in the Bailey-Henslee case, clearly demonstrates that the appellant has failed to show racial discrimination. Furthermore, the fact that there were five Negroes on the jury panel of the First Division[3] Circuit Court at the time the appellant was tried goes far to negative any claim of discrimination. The Trial Court was correct in refusing to quash the jury panel on the evidence offered by the appellant.

Finding no error, the judgment is affirmed.

ROBINSON and HOLT, JJ., not participating.

---

[3] At one time the jurors from the Second and Third Divisions of Pulaski Circuit Court could be used in the First Division; but Act No. 3 of the First Extraordinary Session of 1961 provided that jurors impaneled on the regular or special panels of the Second or Third Division of the Pulaski Circuit Court could not serve in the First Division.